Giselle L. LEWIS, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98–CV–1392(LEK/RWS).

United States District Court, N.D. New York.

April 22, 1999.

Jeffrey Freedman Attorneys at Law, Buffalo, New York, for plaintiff, Kenneth R. Hiller, of counsel.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Syracuse, New York, for defendant, William H. Pease, of counsel.

### DECISION AND ORDER

KAHN, District Judge.

In this action, Plaintiff appeals the final determination of the Defendant denying her claim for disability insurance benefits. This matter comes before this Court following a Report–Recommendation filed on March 31, 1999 by the Honorable Ralph W. Smith, Jr., Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(d) of the Northern District of New York. *See Lewis v. Apfel,* No. 98–CV–1392, 1999 WL 184003 (N.D.N.Y. March 30, 1999). As no objections have been filed, this Court may reject the conclusions of the Report–Recommendation only if they are clearly erroneous or contrary to law. *See* Fed. R.Civ.P. 72(b), Advisory Committee Notes.

Magistrate Judge Smith found that the Administrative Law Judge ("ALJ") had failed to adequately specify what weight he assigned to the opinions of the various treating physicians involved in Plaintiff's treatment according to the factors set out in 20 C.F.R. § 404.1527(d)(2). On review of the ALJ's decision and the regulation, this Court finds no clear error.

The magistrate judge also found that the ALJ had failed to adequately analyze whether the pain Plaintiff reported feeling rendered her disabled according to the applicable regulations and agency rulings. In this determination, the magistrate judge noted that the ALJ must first determine the extent of Plaintiff's pain, based in part on a determination of her credibility,

and then examine whether Plaintiff's symptoms were totally disabling.

██ "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Gallardo v. Apfel,* No. 96 CIV 9435, 1999 WL 185253, *5 (S.D.N.Y. March 25, 1999) (citations omitted). According to the applicable Social Security Ruling, "[i]f an individual's statements about pain ... are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record ... [and] make a finding on the credibility of the individual's statements out symptoms and their functional effects." Social Security Ruling 96–7P, 1996 WL 374186, *4 (July 2, 1996). In making this credibility determination,

> [i]t is not sufficient for the adjudicator ... simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.* at *2.

The ALJ determined that Plaintiff's statements regarding the extent to which her pain left her disabled were not "fully credible as they are not supported by the evidence of record, clinical findings or claimant's medical treatment." Transcript at 12. The magistrate judge's conclusion that this assessment lacks the necessary specificity is not clearly erroneous.

The magistrate judge also found that the ALJ failed to provide substantial evidence for his conclusion that her subjective symptoms were not totally disabling, and advised that on remand, the ALJ should consider each relevant function separately and determine whether it is limited in light of Plaintiff's subject symptoms before making a final determination regarding Plaintiff's residual functional capacity. This Court finds no error in Magistrate Judge Smith's analysis or prescriptions and accordingly adopts the Report–Recommendation in its entirety for the reasons stated therein.

Accordingly, it is

ORDERED that the Report–Recommendation is APPROVED and ADOPTED; and it is further

ORDERED that case is remanded for further proceedings in accordance with this opinion and the Report–Recommendation; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.

### *REPORT RECOMMENDATION AND ORDER*

RALPH W. SMITH, Jr., United States Magistrate Judge.

This matter was referred to the undersigned for a Report and Recommendation by the Honorable Lawrence E. Kahn pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). The case arises under § 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Giselle Lewis' claim for disability insurance benefits. The parties have filed their briefs,[1] including the Ad-

---

1. The Court notes that Plaintiff's brief is replete with typographical errors that could easily have been caught by proofreading the document prior to submitting it to the Court.

*See, e.g.,* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings at 15 (stating that "the decision of the Defendant should be re-

ministrative Record on Appeal, and the matter has been submitted without oral argument. For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed in part and reversed in part.

## I. Procedural History

On November 27, 1995, Plaintiff filed an application for disability insurance benefits pursuant to Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Tr. 41–43.[2] This application was denied after an initial determination, Tr. 56–57, and upon reconsideration. Tr. 69–70. Plaintiff then filed a request for a hearing on August 21, 1996. Tr. 71–73. Her case was heard on April 16, 1997 before Administrative Law Judge ("ALJ") Joachim J. Volhard. After considering the facts de novo, the ALJ rejected Plaintiff's claims in a written decision dated July 22, 1997. Tr. 10–15. On July 31, 1997, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 5. The Appeals Council denied Plaintiff's request on June 25, 1998, Tr. 3–4, and the ALJ's decision became the final decision of the Commissioner. This action followed.

## II. Facts

The Court adopts the facts set forth in Plaintiff's brief with any exceptions noted.

## III. Contentions

In her memorandum in support of her Motion for Judgment on the Pleadings, Plaintiff claims generally that the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff argues, first, that the ALJ failed to give conclusive weight to the opinion of her treating physician and, second, that the ALJ improperly considered her subjective complaints of pain.

## IV. Legal Standards

### A. Standard of Review

■ In reviewing the Commissioner's final decision, a court must determine whether the correct legal standards were applied and whether substantial evidence on the record as a whole supports that decision. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983)). An ALJ must set forth the factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984) (citations omitted). Where substantial evidence exists, the court may not substitute its interpretation of the administrative record. *Mongeur,* 722 F.2d at 1038 (citations omitted). However, where there is a reasonable basis for doubting whether the ALJ applied the appropriate legal standards, even if the ultimate decision may arguably be supported by substantial evidence, the ALJ's decision may not be affirmed. *Johnson,* 817 F.2d at 986.

■ A reviewing court may reverse the ALJ's decision with or without remand. 42 U.S.C. § 405(g). Remand is appropri-

---

vered"). The Court is confident that, in the future, such careless errors will not occur.

2. Page citations are to the administrative transcript filed by the Commissioner.

ate where there are gaps in the record or the ALJ has applied an improper legal standard and further development of the evidence is needed. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975). Reversal without remand is appropriate where there is "persuasive proof of disability" in the record and further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir.1983) (holding that reversal without remand for additional evidence would likely result in further lengthening the "painfully slow process" of determining disability).

### B. *Determination of Disability*

The regulations of the Commissioner outline the steps that an ALJ must follow to determine whether or not an individual is disabled. To be considered disabled within the meaning of the Act, a plaintiff must demonstrate her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1)(A). The regulations further provide that:

> an individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for

him [or her], or whether he [or she] would be hired if he [or she] applied for work.

*Id.* § 423(d)(2)(A).

■■■■ In evaluating a claim for disability, the Commissioner follows a five-step evaluation process. The Second Circuit has explained this process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment [which meets or equals the criteria of an impairment] listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also* 20 C.F.R. § 404.1520. The claimant bears the burden of satisfying the first four prongs of the evaluation process. If the claimant does so, the burden then shifts to the Commissioner to prove the fifth prong of the evaluation process. *Parker,* 626 F.2d at 231 (citations omitted). In making this showing, the Commissioner must demonstrate that, giv-

en the claimant's residual functional capacity ("RFC"), age, education, and past work experience, the claimant can perform some less demanding but gainful work that is available in the national economy. *New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir.1990); *Ferraris*, 728 F.2d at 584–85 (citing 42 U.S.C. § 423(d)(2)(A)). If the Commissioner cannot demonstrate that the claimant is capable of performing other work that exists in the national economy, the claimant will be considered disabled.

## V.   *The Record*

### A.   *Medical Evidence*

Since the date of her injury, Plaintiff has sought the medical assistance of two treating physicians and one chiropractor. In addition, Plaintiff obtained treatment from the Community General Hospital Emergency Room on three separate occasions and was evaluated by two consultative examiners. The Court summarizes below the findings of each.

### 1.   *Ronald G. Donelson, M.D.*

Dr. Donelson was Plaintiff's treating physician between January 31, 1995 and July 17, 1995. During his initial examination of Plaintiff, Dr. Donelson noted that Plaintiff complained of intense pain and numbness in her left foot, and he observed that she was limited in flexion and extension in her lumbosacral area. Tr. 102. He indicated that Plaintiff may have mechanical cervical and lumbosacral discomfort and recommended that she be evaluated by a physical therapist. *Id.* Dr. Donelson also determined that Plaintiff was presently disabled. *Id.*

On February 22, 1995, Dr. Donelson's notes indicate that Plaintiff's condition was assessed by a physical therapist, who found strong evidence of non-mechanical pain behavior. Tr. 103. However, he again noted Plaintiff's severe pain and limited range of motion. *Id.* Dr. Donelson requested that an MRI be conducted on Plaintiff's lumbar spine to rule out the possibility that Plaintiff may have a herni-

ated disc and further requested that nerve conduction studies be performed. *Id.* The MRI was performed on April 5, 1995, and its results were interpreted by Dr. Donelson as nearly normal. Tr. 104. During his examination of Plaintiff on the same date, Dr. Donelson remarked that Plaintiff had missed a number of sessions with her physical therapist and noted that Plaintiff stated that she was suffering from daily urinary incontinence. *Id.* On May 12, 1995, Dr. Donelson opined that, due to Plaintiff's negative MRI, negative nerve conduction studies, negative mechanical evaluations, and the presence of multiple behavioral elements, no further diagnostic or therapeutic interventions were justified. Tr. 107. Accordingly, Dr. Donelson determined that Plaintiff was capable of working four hours per day, with restrictions on bending and lifting. *Id.* On May 24, 1995, Plaintiff returned to Dr. Donelson and stated that she was unable to work due to pain. Tr. 108. Dr. Donelson indicated that, based upon objective tests, he was unable to substantiate the severity of Plaintiff's perceived disability. *Id.* Dr. Donelson reiterated this opinion after Plaintiff met with him again on June 28, 1995. Tr. 109.

### 2.   *Daniel Elstein, M.D.*

Dr. Elstein began serving as Plaintiff's treating physician on August 3, 1995. On that date, Dr. Elstein reviewed the MRI of Plaintiff's spine that was conducted on April 5, 1995 and, contrary to Dr. Donelson, found that Plaintiff had some localized spinal stenosis at L4 and L5. Tr. 118. Dr. Elstein also noted that Plaintiff exhibited some tenderness and loss of sensation. *Id.* He preliminarily diagnosed Plaintiff with lumbar radiculitis secondary to spinal stenosis, and he found her to be totally disabled. *Id.* Plaintiff returned for treatment on August 22, 1995 and September 27, 1995 and reiterated her complaints of persistent back and left leg pain. Tr. 119. On October 25, 1995, Dr. Elstein indicated that Plaintiff stated that she was again

suffering from incontinence, and he scheduled an emergency MRI. *Id.* On October 31, 1995, Dr. Elstein noted that Plaintiff's MRI was normal. *Id.* Plaintiff continued her treatments on November 14, 1995 and December 15, 1995. *Id.*

On January 31, 1996, Dr. Elstein noted that Plaintiff was falling frequently. *Id.* On February 23, 1996, Dr. Elstein reported that a third MRI of Plaintiff's spine was performed on February 5, 1996, and that the results were again normal. Tr. 131, 158. Dr. Elstein also noted that Plaintiff was suffering from incontinence, and he referred her to a neurologist. Tr. 131. On June 17, 1996, Dr. Elstein ordered that Plaintiff undergo a radionuclide bone scan. Tr. 178. The results were normal. *Id.* Throughout his treatment of Plaintiff, Dr. Elstein noted Plaintiff's repeated complaints of severe pain in her lower back and left leg, and he found her to be totally disabled.

### 3. *Vincent V. Sportelli, M.D.*

Dr. Sportelli, a chiropractor, first saw Plaintiff on December 2, 1994. Tr. 121. On December 8, 1994, the results of imaging of Plaintiff's thoracic and lumbosacral areas were found to be normal. Tr. 127. On December 11, 1995, Dr. Sportelli submitted a medical report to the New York State Department of Social Services and diagnosed Plaintiff with sciatica, thoracic intersegmental dysfunction, lumbar intersegmental dysfunction, and lumbosacral strain/sprain. Tr. 121. Dr. Sportelli found, however, that Plaintiff was capable of performing sedentary work. Tr. 123.

### 4. *Community General Hospital*

Since the date of her injury, Plaintiff has also sought treatment for pain in the Emergency Room of Community General Hospital.[3] On May 22, 1995, Plaintiff's attending physician noted that she com-

plained of pain, moved with discomfort, and had tenderness and muscle spasms in her lower lumbar spine. Tr. 111. However, Plaintiff denied having any urinary difficulties. *Id.* After determining that no x-rays or other diagnostic tests were warranted, the attending physician issued Plaintiff prescriptions for her normal pain medications. *Id.* On June 20, 1996, Plaintiff was again admitted for pain, numbness, dizziness, and incontinence. Tr. 162. The attending physician diagnosed Plaintiff with left sciatica. Tr. 172.

### 5. *Consultative Examinations*

Finally, Plaintiff submitted to two consultative examinations at the request of the Social Security Administration. On May 6, 1996, Plaintiff was diagnosed with left sciatica and lower back pain. Tr. 45–54. The examiner found that objective medical findings were normal and did not indicate the need for Plaintiff to use either a cane or a walker to assist her. Tr. 47. Further, the examiner determined that Plaintiff had the functional capacity to work, subject to the following limitations: (a) Plaintiff could occasionally lift a maximum of 20 pounds; (b) Plaintiff could frequently lift a maximum of 10 pounds; (c) Plaintiff could stand/walk about six hours in an eight-hour workday; (d) Plaintiff could sit about six hours in an eight-hour workday; (e) Plaintiff's ability to push or pull was unlimited; and (f) Plaintiff had some postural and environmental limitations. Tr. 47–50. On August 1, 1996, Plaintiff submitted to a second examination. Tr. 61–68. This time, Plaintiff was diagnosed with chronic lumbosacral sprain and left leg weakness. Tr. 61. As with the first consultative examination, this second examiner also noted that objective examinations of Plaintiff had yielded normal results and determined that Plaintiff's ca-

---

**3.** Plaintiff actually sought treatment at Community General Hospital on three separate occasions. During her admission on February 5, 1996, however, Plaintiff was treated by Dr. Elstein, and the results of this visit are included *supra* in the summary of Dr. Elstein's medical care.

pacity to work was subject to similar limitations. Tr. 62–65.[4]

### B. *The ALJ's Determination*

Applying the five-step analysis outlined above, the ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability on November 29, 1994; (2) Plaintiff has severe physical impairments;[5] (3) Plaintiff's impairments are not listed in, or medically equal to, any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) Plaintiff cannot perform her past relevant work; but (5) Plaintiff has the residual functional capacity to perform a broad range of sedentary work. Tr. 14–15.

With respect to Plaintiff's physical disabilities, the ALJ found that Plaintiff has an underlying medically determinable impairment that could reasonably cause the symptoms, including pain, about which she complains. Tr. 12. The ALJ found, however, that this impairment was not so severe as to preclude all work activity. *Id.* In making this determination, the ALJ agreed with the conclusions of Drs. Donelson and Sportelli and rejected Dr. Elstein's opinion that Plaintiff was completely disabled. Tr. 11–12. The ALJ found that Dr. Elstein's opinion was not entitled to controlling weight because, first, it was not supported by objective medical findings and, second, it was inconsistent with other evidence in the record. Tr. 12–13. Further, the ALJ found that Plaintiff's subjective complaints of pain were not supported by the evidence, her medical records, or her medical treatment. Tr. 12. Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## VI. *Discussion*

### A. *The Treating Source Rule*

In 1991, the Secretary of Health and Human Services issued its "Standards for Consultative Examinations and Existing Medical Evidence," 56 Fed.Reg. 36,932 (1991), which modified the "treating physician rule" that was then applied by the Second Circuit. Pursuant to these standards, the ALJ must give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record ...." 20 C.F.R. § 404.1527(d)(2). If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, he must evaluate all medical opinions, regardless of their source, by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the physician's opinion; (4) the consistency of the physician's opinion with the record as a whole; (5) the degree to which the physician is specialized in the area in which he or she has rendered an opinion; and (6) other relevant factors. *Id.* In every case,

---

**4.** The second examiner found the following limitations: (a) Plaintiff could occasionally lift a maximum of 20 pounds; (b) Plaintiff could frequently lift a maximum of 10 pounds; (c) Plaintiff could stand/walk about six hours in an eight-hour workday; (d) Plaintiff could sit less than six hours in an eight-hour workday; (e) Plaintiff's ability to push or pull was limited in the lower extremities; and (f) Plaintiff had some postural and environmental limitations.

**5.** Although the ALJ does not state in his decision that he found Plaintiff's impairment to be severe, it is axiomatic that he reached this conclusion. The regulations of the Commis-

sioner state that a finding that a claimant is either disabled or not disabled may be made at any time during the five-step disability determination process; once such a finding is made, no further review of the claim is necessary. 20 C.F.R. § 404.1520(a). Thus, if the ALJ had found that Plaintiff's impairment was not severe, he would have determined that Plaintiff was not disabled, and his review of Plaintiff's claim would have ended at the second step in the disability determination process. Because the ALJ proceeded to the third step in the disability determination process, he therefore must have found Plaintiff's impairment to be severe.

the ALJ must give "good reasons" in his decision for the weight that he has accorded to a treating physician's opinion. *Id.*

■ In the present case, Plaintiff argues that the Commissioner's refusal to accord controlling weight to Dr. Elstein's opinion is not supported by substantial evidence. The Court disagrees. First, as the ALJ noted, Dr. Elstein's opinion is not based upon objective medical evidence and appears, rather, to be based largely upon Plaintiff's own complaints. Tr. 12–13. Although Dr. Elstein disagreed with Dr. Donelson's interpretation of Plaintiff's first MRI and found that the MRI indicated that Plaintiff suffered from spinal stenosis, two subsequent MRIs ordered by Dr. Elstein were interpreted as normal. *Id.* It thus appears that Dr. Elstein's interpretation of Plaintiff's first MRI was incorrect. Second, as the ALJ noted, Dr. Elstein's opinion that Plaintiff is disabled is inconsistent with other evidence in the record, i.e., the results of objective tests and the opinions of Drs. Donelson and Sportelli. *Id.* The Court thus finds that there is substantial evidence to support the ALJ's decision that Dr. Elstein's opinion is not entitled to controlling weight and accordingly recommends that this portion of the Commissioner's decision be affirmed.

■ However, the Court finds that there is not substantial evidence to indicate what weight the ALJ assigned to Dr. Elstein's opinion or to the opinions of the other physicians who treated or examined Plaintiff. In his decision, the ALJ did not mention, let alone discuss, the opinions of the attending physicians at Community General Hospital and the two consultative examiners. More critically, the ALJ did not recite or apply any of the factors set forth at 20 C.F.R. § 404.1527(d)(2) in evaluating each physician's opinion. Without the benefit of such analysis, it is impossible to determine whether the ALJ's decision is supported by substantial evidence. Accordingly, the Court recommends that this portion of the ALJ's decision be reversed

and remanded for further proceedings consistent with this report.

**B.** *Assessment of Plaintiff's Residual Functional Capacity ("RFC")*

■ Plaintiff argues that the ALJ's rejection of her statements regarding the extent of her pain is not supported by substantial evidence. The Court agrees.

In order to determine whether a claimant possesses the RFC to perform some less demanding but gainful work that is available in the national economy, the Commissioner must consider all available relevant evidence. Social Security Ruling 96–8p, 61 Fed.Reg. 34474, 34477 (Jul. 2, 1996). Factors to be considered include the following: (1) the claimant's medical history; (2) medical signs and laboratory findings; (3) the effects of treatment; (4) the claimant's reports of daily activities; (5) lay evidence; (6) recorded observations; (7) statements from the claimant's medical sources; (8) the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; (9) evidence from the claimant's attempts to work; (10) the claimant's need for a structured living environment; and (11) any available work evaluations. *Id.* Because a symptom may cause exertional and/or non-exertional limitations, it may functionally limit the claimant's ability to work. Social Security Ruling 96–4p, 61 Fed.Reg. 34488, 34489 (Jul. 2, 1996). Thus, the ALJ's consideration of a claimant's symptoms, such as pain, is an important step in the determination of the claimant's RFC. 20 C.F.R. § 404.1545(a).

The regulations of the Commissioner clearly state how a claimant's complaints of pain are to be evaluated. This evaluation includes an assessment of all evidence in the record, including objective medical evidence, as well as a claimant's subjective statements. *See* Social Security Ruling 96–7p, 61 Fed.Reg. 34483, 34484 (Jul. 2, 1996) ("Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objec-

tive medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record ....."). At the hearing level, an ALJ must make a finding about the credibility of the claimant's statements regarding the extent and effects of pain. *Id.* at 34485. This finding must be based upon consideration of the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications that the claimant is taking or has taken to alleviate the pain; (5) any treatments, other than medication, that the claimant is receiving or has received for relief from pain; (6) any other measures that the claimant uses or has used to relieve the pain; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(4); Social Security Ruling 96–7p at 34485.

The ALJ must discuss his resolution of the claimant's credibility regarding pain in a narrative discussion that provides specific reasons for the weight that he assigned to the claimant's statements; he may not merely conclude that the claimant's statements are not credible. Social Security Ruling 96–8p at 34478; Social Security Ruling 96–7p at 34485–86. Furthermore, a claimant's subjective complaints of pain may not be rejected solely because the available objective evidence does not substantiate the complaints. 20 C.F.R. § 404.1529(c)(2); Social Security Ruling 96–7p at 34487.

Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate limitations that affect the claimant's ability to sit, stand, walk, lift, carry, push, and pull, as well as any non-exertional limita-

tions that the claimant may have. Social Security Ruling 96–4p at 34489; Social Security Ruling 96–8p at 34477. In making this determination, each exertional and non-exertional function must be considered separately. *Id.* Only after the ALJ has completed this assessment can he determine whether the claimant possesses the RFC to perform some less demanding but gainful work that is available in the national economy.

In the present case, the ALJ found that Plaintiff's subjective statements were not "fully credible" in light of the objective evidence in the record and that her symptoms "are not of such severity, persistence, or intensity as to preclude all work activity." Tr. 12. This conclusory determination falls far short of the standards outlined above. Nowhere does the ALJ discuss the factors to be considered in analyzing Plaintiff's complaints of pain, nor does he provide a "narrative discussion" of the weight that he accorded to Plaintiff's statements. Further, the ALJ has not provided his own determinations of Plaintiff's functional and non-functional limitations, and he has utterly failed to discuss or apply any of the factors set forth at Social Security Ruling 96–8p prior to arriving at his conclusion that Plaintiff possesses the RFC to perform sedentary work. Without the benefit of the ALJ's analysis, it is impossible for the Court to determine whether substantial evidence supports his conclusion that Plaintiff is not disabled.[6] Accordingly, the Court recommends that this portion of the Commissioner's decision be reversed and remanded for further proceedings consistent with this report.

## VII. *Conclusion*

For the reasons set forth above, it is hereby

---

**6.** In rejecting this portion of the ALJ's decision, the Court expresses no opinion as to whether or not Plaintiff's pain renders her totally disabled. Rather, the Court finds only that the ALJ's determination of this issue is not supported by substantial evidence. The ALJ may avoid this result in the future by addressing in his decision the steps outlined above and by discussing the merits of Plaintiff's complaints with regard to each of them.

RECOMMENDED that the case be REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for a re-evaluation of all medical opinions received and for a re-evaluation of whether Plaintiff's pain renders her disabled.

IT IS HEREBY ORDERED that the Clerk of the Court serve a copy of this Report and Recommendation, by regular mail, upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

March 30, 1999.