Charlene A. MAURO KING, Plaintiff,

v.

Nancy A. BERRYHILL, Acting Commissioner, Social Security Administration, Defendant.

CIVIL ACTION NO. 15–00285–WGY

United States District Court, N.D. New York.

Signed April 14, 2017

Howard D. Olinsky, Michelle M. Fecio, Nathaniel V. Riley, Olinsky Law Group, Syracuse, NY, for Plaintiff.

David B. Myers, Social Security Administration Office of Regional General Counsel, New York, NY, for Defendant.

## MEMORANDUM & ORDER

YOUNG, D.J.[1]

## I. INTRODUCTION

Charlene A, Mauro King ("King") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of Social Security (the "Commissioner")[2] denying King's application for Supplemental Security Income benefits ("benefits") for lack of disability.

### A. Procedural History

On February 16, 2012, King filed an application for benefits, alleging disability since November 7, 2010. Admin. R. 171, ECF No. 9-6.[3] King's application was ini-

---

**1.** Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 13.

**2.** Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration, and thus is substituted for Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

**3.** The administrative record spans multiple docket entries, labeled ECF Nos. 9-1 through 9-8. For the sake of simplicity, this Court cites page numbers in the continuously paginated record as a whole, omitting reference to particular ECF numbers.

tially denied on May 21, 2012. Id. at 10. Thereafter, King filed a written request for a hearing. Id. Following a hearing held on June 10, 2013, the hearing officer[4] issued a written decision denying King benefits on August 1, 2013. Id. at 10–19. King timely appealed to the Agency Appeals Council, which denied her request on January 9, 2015. Id. at 2–6.

On March 12, 2015, King filed a complaint in this Court challenging the Commissioner's final decision to deny benefits. Compl., ECF No. 1. The Commissioner filed an answer on May 26, 2015. Def.'s Answer, ECF No. 8. King filed a memorandum in support of her complaint, requesting that the Commissioner's decision be vacated and the case be remanded for further administrative proceedings, including a new hearing with vocational training testimony. Pl.'s Mem. Law ("Pl.'s Br."), ECF No. 10. The Commissioner filed a memorandum in opposition requesting the decision be affirmed. Def.'s Br. Pursuant General Order 18 ("Def.'s Br."), ECF No. 11. On January 31, 2017, this Court heard the parties' oral arguments[5] and took the matter under advisement. Electronic Clerk's Notes, ECF No. 16.

## B. Factual Background[6]

King was born April 3, 1961 and was 50 years old on the date she filed her application for disability benefits. Admin. R. 171. In 1997, King obtained a nurse's aide certification, id. at 186, which has now expired, id. at 58. King has her GED, id. at 57–58, and completed two years of college in 1993, id. at 186. She has held several jobs: shelter manager at the Salvation Army from 1993 to 1995, secretary in October 2007, nurse's aide at a nursing home from 1997 to 1998, and activities assistant at a nursing home from 2000 to 2002. Id. at 174.

In her initial application, King claimed disability due to kidney problems, a heart condition, arthritis, a back problem, thyroid issues, and high blood pressure. Id. at 185. At the hearing, King testified about issues with her kidneys, back, knees, and feet, as well as heart palpitations. Id. at 63–66.

4. For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, 164 F.Supp.3d 249, 251 n.1 (D. Mass. 2016).

5. In addition to the full administrative record and briefing by both parties, this Court has benefitted from oral argument.

Granting oral argument in a social security appeal is something new for this Court. I have adopted this approach upon the recommendation of Kelly McClure, Esq., a recent law clerk of my colleague, the Honorable Allison Burroughs. Having returned from law clerk training at Pepperdine University Law School, Ms. McClure made the recommendation as a means of increasing efficiency in the handling of social security appeals without impairing the quality of justice.

Accordingly, armed with thorough bench memoranda, this Court heard six such appeals during the afternoon of January 31, 2017. Three were denied directly from the bench and the remaining three (this is one) were taken under advisement. Thus, while no particular efficiency resulted in this case, I am quick to recognize that oral argument played (as it so often does) a pivotal role in the Court's analysis. The overall efficiency in case processing is, however, evident.

Court technology deserves commendation here. I presided over these hearings while sitting in Boston (although designated a visiting judge in the Northern District of New York). Plaintiffs' counsel and one pro se plaintiff appeared in their home courts in Albany and Syracuse. Government counsel phoned in from the Manhattan courthouse of the Southern District of New York. Had we had just a bit more time, I could have seen everyone via our present split video screen technology. The savings in costs and travel times are apparent.

6. The Court sketches a brief overview of the background facts here, with further factual discussion incorporated as necessary into the Court's analysis of King's legal claims.

## II. LEGAL STANDARD

This Court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are unsupported by "substantial evidence"—considering the record as a whole—or if the decision is based upon an erroneous legal standard. Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)), and must be " 'more than a mere scintilla,' " Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008)).

To receive federal disability benefits, an applicant must show disability as defined by the Social Security Act. Shaw, 221 F.3d at 131 (citing 42 U.S.C. § 423(a),(d)). That is, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Social Security Administration outlines a five-step inquiry to determine whether a claimant meets this standard:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) [if not], whether the claimant has a severe impairment or combination of impairments; (3) [if yes], whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) [if not, then,] based on a residual functional capacity [ ("RFC") ] assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) [if not,] whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Burgess, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The burden of proof is on the claimant for the first four steps, and on the Commissioner for the last. Shaw, 221 F.3d at 132.

## III. THE HEARING OFFICER'S DECISION

Following the five-step analysis, the hearing officer first found that King had not engaged in any substantial gainful activity since applying for benefits. Admin. R. 13. Next, the hearing officer concluded that King's recurrent nephrolithiasis[7] was a severe impairment, id., but that the impairment did not meet the severity criteria in any of the listed impairments under 20 C.F.R §§ 416.920(d), 416.925 and 416.926, Admin. R. 16. The hearing officer then found that King had the RFC to perform a full range of light work as defined by 20 C.F.R § 416.967(b). Admin. R. 16–18. In making this determination, the hearing officer evaluated whether King experienced any pain or symptoms due to her impairment that limited King's functioning, id. at 16, and gave controlling weight to the

---

7. " 'Nephrolithiasis is a condition in which hard masses (kidney stones) form within the urinary tract. These stones form from crystals that separate out of the urine. Formation may occur when the urinary concentration of crystal-forming substances (e.g., calcium, oxalate, uric acid) is high and/or that of substances that inhibit stone formation (e.g., citrate) is low.' " Def.'s Br. 4 n.2 (quoting Definition of Nephrolithiasis, Official Website U.S. Nat'l Libr. Med.; http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0048744/(last accessed Apr. 10, 2017)).

opinion of the consultative examining physician, Dr. Kalyani Ganesh ("Dr. Ganesh"), over that of the treating physician, Dr. Rakesh Khanna ("Dr. Khanna"), id. at 17. The hearing officer also found that King had no relevant past work and, ultimately, that King was not disabled. Id. at 18–19.

## IV. ANALYSIS

There are four issues before this Court: (1) whether the Commissioner erred by failing to consult a vocational expert at Step 5; (2) whether Dr. Ganesh's opinion—made without reviewing Dr. Khanna's—can be substantial evidence to support the RFC finding; (3) whether the hearing officer failed to apply the treating physician rule properly when finding King's RFC; and (4) whether the Commissioner erred in determining that King's statements concerning the intensity, persistence, and limiting effects of her pain were not credible.

### A. Failure to Consult Vocational Expert at Step 5

■ For reasons which will become apparent, the Court commences its analysis at the final steps. King alleges that the hearing officer erred as matter of law because she relied on the Medical–Vocational Guidelines, even though the "evidence established the presence of non-exertional limitations not accounted for by the framework of the Medical–Vocational Rules." Pl.'s Br. 16. King further argues that the hearing officer should have accepted Dr. Khanna's opinion about multiple non-exertional limitations that would have had a substantial effect on the occupational base of light work. Id. In response, the Commissioner argues that the hearing officer properly held that King was not disabled, per the Medical Vocational Rules, because King could "perform the full range of light exertional work without any non-exertional

limitations," in light of substantial evidence. Def.'s Br. 17.

■ At the fifth step, the Commissioner has the burden to show that "significant numbers of jobs exist in the national economy that the claimant can perform." McIntyre, 758 F.3d at 151 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). Generally, "the Commissioner meets his burden ... 'by resorting to the applicable medical vocational guidelines (the grids).'" Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)). It is, however, inappropriate to rely exclusively on the grids when "'the guidelines fail to describe the full extent of a claimant's physical limitations.'" Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004) (quoting Rosa, 168 F.3d at 78).

Here, King does not argue that her limitations are not covered under the guidelines, but rather challenges the Commissioner's reliance on the RFC finding of the hearing officer. Pl.'s Br. 16. In her analysis, the hearing officer noted that King had no past work, but had the RFC to perform a full range of light work. Admin. R. 18–19. The hearing officer also considered other vocational factors, such as King's age, education, and work experience, and ultimately concluded that King was not disabled. Id. Because the hearing officer considered all of these factors, she appropriately relied on the Medical Vocational Guidelines. See Koch v. Colvin, 570 Fed.Appx. 99, 102 (2d Cir. 2014) (summary order) (citing 20 C.F.R. § 404.1520(g)) (holding that the hearing officer was not required to consult vocational evidence where the hearing officer, after determining that the claimant could not perform past work, considered the RFC finding and vocational factors under Medical–Vocation Rule 201.2). Accordingly, putting aside the issue of Dr. Khanna's opinion, which will be addressed

below, this Court upholds the hearing officer's reliance on the Medical Vocational Guidelines instead of consulting a vocational expert.

### B. Dr. Ganesh's Failure to Consider Later Evidence

■ The Court now turns to King's argument that Dr. Ganesh's opinion cannot support the RFC finding because Dr. Ganesh did not review later evidence. To determine the "intensity, persistence, [and] limiting effects of [King's] functioning," Admin. R. 16, the hearing officer considered two allegedly conflicting medical opinions, one from a consultative examiner, Dr. Ganesh, and the other from a treating physician, Dr. Khanna, id. at 17. King argues that Dr. Ganesh did not provide substantial evidence to support the RFC finding because Dr. Ganesh did not receive the "necessary background information" regarding King's impairments that Dr. Khanna considered. 1/31/2017 Tr. 2:10–18. King states that among the medical evidence that Dr. Ganesh did not receive were Dr. Khanna's opinion and the record of the surgery King underwent in July 2012, after Dr. Ganesh gave his opinion. Id. at 3:20–23. In response, the Commissioner argues that it is irrelevant whether Dr. Ganesh actually reviewed all of the medical evidence because he was aware of King's relevant medical history. Id. at 6:11–15. The Commissioner further argues that Dr. Ganesh, as an independent consultative examiner, was not obligated to review "every single medical record before issuing a decision." Id. at 6:16–21.

■ A consultative examiner's opinion may not constitute substantial evidence where the consultative examiner is not provided the plaintiff's treatment record or diagnostic studies, i.e., the necessary background information. Burgess, 537 F.3d at 132; see also Adesina v. Astrue, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *10 (E.D.N.Y. Oct. 22, 2014). For example, in Burgess, the consultative examiner's opinion reflected that he had neither read nor was aware of a report evaluating an MRI, and accordingly, the court did not view the consultative examiner's opinion as substantial evidence. 537 F.3d at 132.

Here, Dr. Ganesh issued his opinion on April 27, 2012, Admin. R. 345, but Dr. Khanna issued his opinion on July 11, 2013, id. at 501. Dr. Ganesh could not have reviewed Dr. Khanna's opinion because it was later in time. The requirement for Dr. Ganesh to have received "necessary background information" does not extend to medical records issued after Dr. Ganesh's opinion. King's argument that because Dr. Ganesh did not receive Dr. Khanna's opinion, Dr. Ganesh's opinion is not substantial evidence to support an RFC finding is unfounded in controlling case law. Moreover, unlike in Burgess, Dr. Ganesh had read the past medical records and was aware of King's impairments, including the diagnosis of kidney stones and the treatments she underwent. Id. at 345. In conclusion, as long as Dr. Ganesh was aware of King's past medical records, the opinion need not consider later medical evidence in order to constitute substantial evidence to support an RFC finding.

### C. Rejection of Dr. Khanna's Opinion

■ King also claims the hearing officer failed to consider the required factors under the "treating physician rule" before rejecting Dr. Khanna's opinion and thus erred as matter of law. Pl.'s Br. 11–13. The Commissioner argues that the hearing officer is not required to consider each of the factors but may conduct a more cursory review when "adherence to the regulation is otherwise clear." Def.'s Br. 11.

The Commissioner should consider the following factors and give "good reasons" to determine the weight accorded to a treating physician's opinion:

(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors ... that tend to support or contradict the opinion.

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citing Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2)).

Here, the hearing officer gave no weight to Dr. Khanna's opinion. Admin. R. 17–18. The Commissioner notes that in according the opinion no weight, the hearing officer appropriately considered: (i) the nature and extent of the treatment relationship, (ii) Dr. Khanna's medical specialty as a urologist, (iii) the supportability of Dr. Khanna's opinion, and (iv) the inconsistency between Dr. Khanna's and Dr. Ganesh's opinions. Def.'s Br. 11–12.

### 1. Supportability [8]

Dr. Khanna uses the phrase "being worked up for hematuria" throughout the Medical Source Statement form issued on July 11, 2013. Admin. R. 501–504. The hearing officer interpreted the phrase as a caveat suggesting that "the assessment was conditional and subject to review upon completion of testing and other evalua-

tion." Id. at 17. The Commissioner argues that the hearing officer's interpretation was rational and, because it indicated the questionable supportability of Dr. Khanna's statement, was "good reason" to accord the opinion less weight. Def.'s Br. 10. The Commissioner concludes that the hearing officer's interpretation of the phrase "being worked up" was "hardly unfathomable, and any reasonable factfinder would not be compelled to conclude otherwise based on a review of Dr. Khanna's form," and thus should be upheld considering the substantial evidence standard. Id.

To counter this interpretation, King cites to the medical evidence indicating that King was "receiving tests, surgeries and objective imaging for her nephrolithiasis and renal calculi because her physicians [were] unable to completely eliminate ... hematuria," [9] and argues the hearing officer's interpretation of the phrase "being worked up," was "unsupported and baseless." Pl. Br. 10. Because the Commissioner's decision was influenced by her balancing of the opinions of Dr. Khanna (the treating physician) and Dr. Ganesh (the consultative examiner), the Court now turns to that issue.

### 2. Inconsistency with Dr. Ganesh's Opinion

The Commissioner notes that "Dr. Ganesh opined that [King] had '[n]o gross limitation [for] sitting, standing, or walking,' and '[m]ild-to-moderate limitation [for] lifting, carrying, pushing, and pull-

8. "Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R § 416.920c(c)(1).

9. King points out that the medical records from 2010 until 2013 indicate that King was diagnosed and was receiving treatment for kidney stones because her surgeries did not completely eliminate "her staghorn calculus or ... conclusively explain recurrent urinary tract infections and hematuria." Pl.'s Br. 10 (citing Admin. R. 280, 305–06, 310, 319, 320, 321, 323, 327–29, 331, 337–38, 378, 433, 446, 453–54, 457, 460, 490).

ing.' ". Def.'s Br. 8 (quoting Admin. R. 348). The Commissioner argues that the hearing officer appropriately gave Dr. Ganesh's opinion controlling weight because Dr. Ganesh's opinion "better supported" the hearing officer's finding and Dr. Khanna's opinion was "not supported by the totality of records in evidence." Def.'s Br. 8, 12.

■■■ Generally, a treating physician's opinion deserves deference. Veino, 312 F.3d at 588 (citing Carroll v. Secretary Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980)). It need not be given controlling weight, however, if it is not supported by substantial evidence in the record. Id. (citing Bluvband v. Heckler, 730 F.2d 886, 892–93 (2d Cir. 1984); Ferraris v. Heckler, 728 F.2d 582, 586 n.1 (2d Cir. 1984)). An opinion which is not inconsistent with other substantial evidence and is well-supported by clinical and laboratory diagnostic techniques is deemed controlling. 20 C.F.R § 416.927(c)(2). Most importantly, the Commissioner, not this Court, is the factfinder who resolves "[g]enuine conflicts in the medical evidence." Veino, 312 F.3d at 588 (citing Richardson, 402 U.S. at 399, 91 S.Ct. 1420).

Here, to resolve the conflict in the opinions of Dr. Ganesh and Dr. Khanna, the Commissioner, first, was required to consider whether Dr. Khanna's opinion was consistent with other substantial evidence and whether it was well—supported by clinical evidence. 20 C.F.R § 416.927(c)(2). This is not, however, what the Commissioner did. To evaluate consistency between Dr. Khanna's opinion and the medical records, the Commissioner only considered and compared Dr. Khanna's opinion with that of Dr. Ganesh. Def.'s Br. 8–10.

In this case, there was "other substantial evidence" corroborating Dr. Khanna's opinion, i.e., medical evidence of surgeries and tests conducted for King's nephrolithiasis from 2010 to 2013. Admin. R. 280, 305, 306, 310, 320, 321, 323, 327–29, 331, 337–38, 433, 446, 453, 454, 457, 460, 490. These medical records indicate that King was diagnosed and was receiving treatment for kidney stones because the surgeries did not completely eliminate "her staghorn calculus or . . . conclusively explain recurrent urinary tract infections and hematuria." Pl.'s Br. 10. Additionally, although the Commissioner had the authority to interpret Dr. Khanna's statement form, because it is open to more than one meaning, this Court reviews the Commissioner's decision in light of the "substantial evidence, considering the record as a whole.' " McIntyre, 758 F.3d at 149. Here, the Commissioner should have considered the phrase "being worked up" in light of the medical records and not solely the conflicting opinion of Dr. Ganesh. See Halloran, 362 F.3d at 32.

■■■ Second, a medical expert's opinion is not substantial where the expert describes impairments as "mild" or "moderate" because, without additional information, such terms are vague and deemed " 'useless in evaluating' the claimant's [RFC]." Burgess, 537 F.3d at 129 (quoting Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)). For example, more weight might be accorded to a consultative examiner's opinion that includes additional information about the limitations, such as the specific weight range a claimant can lift or carry and the lengths of time she can sit, stand, or walk. Adesina, 2014 WL 5380938, at *10.

Here, Dr. Ganesh used terms such as "no gross," and "mild-to-moderate" to describe King's limitations. Admin. R. 348. Dr. Ganesh did not provide further information to explain the limitations specifically. Id. Because Dr. Ganesh's opinion was vague, it was "not reasonably capable of

supporting the conclusion that [King] could work," which the hearing officer ought have considered when determining the weight to be given to that opinion. See Burgess, 537 F.3d at 128–29. Accordingly, keeping the legal standard in mind, the hearing officer must re-evaluate the weight to be given to Dr. Ganesh's opinion.

In conclusion, the hearing officer erred in two respects. First, the hearing officer relied on Dr. Ganesh's opinion to interpret Dr. Khanna's statement form without considering the other substantial evidence in the record. Second, the hearing officer failed to take into account the vagueness of Dr. Ganesh's opinion. Accordingly, the "good reasons" cited by the Commissioner for affording Dr. Khanna's opinion no weight are based on erroneous conclusions. The hearing officer rejected Dr. Khanna's opinion because it was not "supported by the totality of the records in evidence," Admin. R. 18; however, the Commissioner should not have relied solely on Dr. Ganesh's opinion instead of other substantial evidence to resolve the conflict between the opinions of Dr. Ganesh and Dr. Khanna or to interpret the terms "being worked up" in Dr. Khanna's statement form. The Commissioner's decision to give controlling weight to Dr. Ganesh's opinion instead of Dr. Khanna's opinion was thus an error of law, see Burgess, 537 F.3d at 129–30 (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)) ("Failure to provide [ ] 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.'"), upon which this Court remands the Commissioner's decision.

## D. Credibility Determination

■ The hearing officer determined that King's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible," and that her "allegations [were] not fully supported by objective medical evidence and opinion and contradicted by other evidence." Admin. R. 17. King challenges the hearing officer's reasons for reaching this conclusion. Pl.'s Br. 13–16. King argues that the hearing officer relied on the fact that King got her 10 year old grandchild, "someone too young to be of much help by way of driving or carrying heavy loads," to the consultative examination, but that this fact was of no significance. Id. at 13. Specifically, King points out that the consultative examiners, Dr. Ganesh and Dr. Caldwell, noted that she did not drive, but took the bus, and that she did not need to carry heavy loads to the consultative examination. Id. at 13–14. Next, King argues that although she told Dr. Ganesh that she could perform daily activities such as cooking, cleaning, shopping, and performing child care and self-care, her ability to perform these activities had diminished since the date of examination. Id. at 14. King relies on the "medical evidence [to show] her kidney functioning was getting objectively worse near the end of 2012." Id.

■ The hearing officer has the discretion "to evaluate the credibility of the plaintiff's testimony and render an independent judgment in light of the evidence of record as to the true extent of the plaintiffs [sic] symptoms." Sloan v. Colvin, 24 F.Supp.3d 315, 327 (W.D.N.Y. 2014) (citing Mimms v. Secretary of Health & Human Servs., 750 F.2d 180, 186 (2d Cir. 1984)). The hearing officer, however, may not "'set his own expertise against that of a physician who [submitted an opinion to or] testified before him.'" Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (alteration in original) (quoting McBrayer v. Secretary of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)). In addition, the hearing officer must explain her rea-

sons " 'with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.' " Knighton v. Astrue, 861 F.Supp.2d 59, 68 (N.D.N.Y. 2012) (Mordue, J.) (quoting Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y. 1999)).

The evaluation of the credibility of a claimant's testimony is a two-step process. Cichocki v. Astrue, 534 Fed.Appx. 71, 75 (2d Cir. 2013) (summary order). At the first step, the hearing officer must analyze "whether the medical signs or laboratory findings show that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." Id. If there is an impairment, the hearing officer moves to the second step, " 'evaluat[ing] the intensity and persistence of [the claimant's] symptoms' to determine the extent to which the symptoms limit the claimant's capacity for work." Id. (alteration in original) (quoting 20 C.F.R. § 416.929(c)(1)). If the claimant's symptoms are not substantiated by medical evidence, the hearing officer must consider:

(i)  [The claimant's] daily activities;

(ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;

(v)  Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;

(vi)  Any measures [the claimant] use[s] or ha[s] used to relieve [ ] pain or other symptoms ... ; and

(vii)  Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.329(c)(3).

Here, the hearing officer adopted the two-step process. At the first step, the hearing officer determined that King had an underlying medically determinable physical or mental impairment that is likely to produce pain or other symptoms. Admin. R. 16. Next, the hearing officer evaluated the limiting effects of King's symptoms. Id. The hearing officer concluded that that King's testimony was not fully supported by "objective medical evidence and opinion and contradicted by other evidence." Id. at 17. The hearing officer opined that, although the records indicate "intermittent kidney issues," they do not show "limitations in exertional activities." Id. Because the hearing officer categorically stated her consideration of "medical evidence and opinion," id., it is unclear whether the hearing officer considered "all available evidence, including [King's] history, medical signs and laboratory findings, and statements from [King], [King]'s treating or nontreating source, or other persons about how the symptoms affect [King]." Cichocki, 534 Fed.Appx. at 75–76 (citing 20 C.F.R. § 416.929(c)(1)).

The hearing officer also failed to give " 'specific reasons for the finding on credibility [that are] supported by the evidence in the case record.' " Id. at 76 (quoting SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1936)). The only explanation relates to King's visit to Dr. Ganesh, wherein the hearing officer notes that King arrived with her 10 year old grandchild and reported "she could cook or clean as needed, do laundry and shopping once a week, do child care and all of her self-care as well." Admin. R. 17. Thus, the hearing officer does not sufficiently clarify what weight

she afforded King's statements, nor the rationale for that weight. See Cichocki, 534 Fed.Appx. at 76.

The hearing officer may not make "single conclusory statements" regarding King's credibility. Id. Due to the hearing officer's lack of reasoning or explanation for reaching the conclusion on the credibility determination, and because a remand is necessary in any event, this Court also remands the hearing officer's decision on the issue of credibility.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part King's complaint, ECF No. 1. The decision of the Commissioner is vacated, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**