**Debra Ann SLOAN, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 13–cv–6154 EAW.**

United States District Court, W.D. New York.

Signed June 9, 2014.

316

Howard D. Olinsky, Jillian C. Karas, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, Vernon Norwood, Social Security Administration, New York, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

Plaintiff Debra Ann Sloan ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying her application for Supplemental Security Income ("SSI") benefits. (Dkt. 1). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 8, 10). Because the ALJ's decision is supported by substantial evidence, the Plaintiff's motion is denied and the Commissioner's motion is granted.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On March 22, 2010, Plaintiff filed an application for SSI. (Administrative Transcript (hereinafter "Tr.") at 161–63). In her application, Plaintiff alleged a disability onset date of October 20, 2009. (Tr. 161). Plaintiff alleged the following disabilities: rheumatoid arthritis, poor circulation, asthma, depression, anxiety, and anemia. (Tr. 182). On July 30, 2010, the Commissioner denied Plaintiff's application. (Tr. 83). Plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ") on September 1, 2010. (Tr. 104).

On August 23, 2011, Plaintiff, represented by counsel, testified at a video hearing before ALJ Roxanne Fuller. (Tr. 42–71). Vocational Expert ("VE") Dian L. Haller also testified. (Tr. 24–37). On October 4, 2011, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 25–37).

Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council on December 8, 2011. (Tr. 17). On February 22, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 2–8). On March 25, 2013, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

### B. The Non–Medical Evidence

#### 1. Plaintiff's Testimony

At the time of the hearing, Plaintiff was a 5′4″, 102 pound, 46–year old female. (Tr. 46). Plaintiff was previously employed as a certified nurse assistant, but had not been so employed since 2005.[2] (Tr. 48). Plaintiff testified that she could no longer perform her past work as a nurse's aide because her arthritis caused pain and swelling in her hands and legs. (*Id.*). She said it was a struggle to do basic things like brush her teeth or get dressed, and that she had trouble sleeping. (Tr. 51–55).

---

1. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, the Court hereby amends the caption of the case *sua sponte* to reflect that Ms. Colvin is the Defendant.

2. Plaintiff reported her work history as follows: 1994–1997: Line Operator; 2001–2005: Certified Nurse Assistant; October 2009: Line Operator. (Tr. 183).

Plaintiff testified that on a good day, she could lift a five-pound bag of sugar with both hands, but on a bad day, she could not lift more than two or three pounds. (Tr. 56). She indicated that she had trouble lifting objects and standing or walking for any period of time. (Tr. 48–51). Plaintiff claimed that she was fatigued daily and needed time to lie down for approximately thirty minutes at least twice per day. (Tr. 54). Plaintiff alleged that she could not sit for more than twenty minutes at a time or stand for more than thirty minutes continuously. (Tr. 55–56). She testified that the pain has kept her from doing things she used to enjoy, such as going to the movies or reading a book, because she has to get up and move around to alleviate the pain. (Tr. 57).

### 2. Vocational Expert's Testimony

The ALJ presented VE Dian Haller with a hypothetical question. (Tr. 65–66). The VE was asked to consider someone of Plaintiff's age, education, and experience who could perform light work that required no more than frequently operating foot controls with both legs, who could never climb ramps, stairs, ladders, ropes, nor scaffolds, who could never balance, and who could only occasionally stoop, crouch, crawl, or kneel. (Tr. 65). The individual could "occasionally handle objects, that is, gross manipulation with both hands." (Tr. 66). She could "occasionally finger, that is, fine manipulation of items no smaller than the size of a paperclip." (*Id.*). She should avoid moderate exposure to irritants such as fumes, odors, dusts, and gases, as well as poorly ventilated areas. (Tr. 65). She could remember and carry out one-to-two step instructions as well as perform simple, routine, repetitive tasks. (*Id.*). The ALJ incorporated considerations for Plaintiff's alleged asthma, heart palpitations, and psychological limitations, despite the ALJ's finding that these limitations were not severe. (Tr. 27–28, 30).

The VE testified that a hypothetical individual with these abilities and restrictions would be able to perform occupations that existed in significant numbers in the national economy, including rental clerk, gate attendant, and usher/lobby attendant. (Tr. 66–67).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

On February 11, 2009, Plaintiff treated with Melissa Brown, M.D., at Westside Health Services ("WHS"), complaining of anorexia, fatigue, insomnia, and loss of appetite. (Tr. 311–12). Dr. Brown assessed Plaintiff for major depression, psychoactive substance abuse, and anxiety disorder, and prescribed the medications Neurontin® and "Trazodone" for Plaintiff's depression. (Tr. 311).

Plaintiff treated with nurse practitioner Karen Snow–Holmes at WHS on May 27, 2009. (Tr. 303–04). Ms. Snow–Holmes noted Plaintiff had a flat affect. (Tr. 303).

On June 17, 2009, Plaintiff treated with Ese Ejaife, M.A., at Unity Health System ("UHS"), who diagnosed Plaintiff with polysubstance dependence and major depressive disorder. (Tr. 548–50).

Plaintiff visited Dr. Brown on June 22, 2009, complaining of depression, weight loss, racing thoughts, fatigue, and feelings of guilt and isolation. (Tr. 300–02). Dr. Brown referred Plaintiff to psychiatry for assessment. (Tr. 301). Plaintiff visited Dr. Brown again on July 22, 2009, complaining of bilateral knee pain, lower leg pain, and shin pain. (Tr. 292–93). Dr. Brown diagnosed osteoarthritis and Raynaud's phenomenon. (Tr. 292).

On September 4, 2009, Plaintiff treated with Lena Kieliszak, L.M.H.C, who noted Plaintiff had symptoms of "racing thoughts and feelings of euphoria and dissociation." (Tr. 554). Plaintiff informed Ms. Kieliszak on December 15, 2009, that she planned to move to Arizona. (Tr. 578). Ms. Kieliszak assessed Plaintiff for, *inter alia*, polysubstance dependence and depressive disorder. (Tr. 582). Ms. Kieliszak closed Plaintiff's case on January 4, 2010. (Tr. 581).

On January 29, 2010, Plaintiff visited Dr. Brown for chronic fatigue, joint pain, and joint weakness. (Tr. 272–74). Dr. Brown assessed Rheumatoid Arthritis, pain in limb, and Vitamin D deficiency, and recommended Neurontin® for the joint pain. (Tr. 272–73).

On February 17, 2010, Plaintiff saw Dr. Andreea Coca at the University of Rochester Medical Center ("URMC"), complaining of joint pain. (Tr. 252–54). Dr. Coca determined Plaintiff had "lateral elbow tendonitis," "left lateral epicondylitis on her elbow," and "bilateral patellofemeroal syndrome." (Tr. 257). On February 24, 2010, Dr. Coca determined Plaintiff had a combination of inflammatory and non-inflammatory joint pain, and recommended Plaintiff try a steroid to help her symptoms. (Tr. 253–54). Dr. Coca administered a steroid injection to Plaintiff's left knee on April 27, 2010. (Tr. 249).

Plaintiff returned to Dr. Brown on April 13, 2010, and Dr. Brown recommended Plaintiff take Plaquenil® for rheumatoid arthritis. (Tr. 269).

On July 6, 2010, Plaintiff submitted to a consultative psychiatric evaluation by Adele Jones, Ph. D. (Tr. 340–44). Dr. Jones noted Plaintiff had lost 10 pounds in one and one half weeks, and also noted that Plaintiff experienced crying, loss of energy, irritability, racing thoughts, and fatigue. (Tr. 340–41). Dr. Jones diag-

nosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, alcohol dependence, cocaine dependence, cannabis dependence, rheumatoid arthritis, osteopenia, peripheral arterial disease, and asthma. (Tr. 343). Plaintiff reported that she dressed, bathed, and groomed herself; watched television; read; cooked; cleaned; shopped; managed money; used public transportation; fished; and socialized with relatives. (Tr. 342). Dr. Jones opined that Plaintiff:

> [is] able to follow and understand simple directions, perform simple and complex tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate with others, and appropriately deal with stress. However, there are some physical limitations due to her walking, carrying, and poor circulation.

(*Id.*).

On July 6, 2010, Plaintiff submitted to an orthopaedic examination with Suzanne Picinich, D.O., complaining of rheumatoid arthritis, peripheral artery disease, osteopenia, and asthma. (Tr. 345). Dr. Picinich diagnosed Plaintiff with rheumatoid arthritis, peripheral artery disease, osteopenia, and asthma. (Tr. 348). Dr. Picinich opined that Plaintiff had "mild to moderate limitations for sitting, standing, and kneeling. There are moderate limitations in walking, climbing stairs, bending, lifting, carrying, reaching, and handling heavy objects." (Tr. 348–49). Additionally, Dr. Picinich noted "moderate limitations for traveling due to the multiple joint pain and difficulty with the left wrist and hand." (Tr. 349). Plaintiff reported that she showered herself, cooked, cleaned, did laundry with some help, read, watched television, and socialized. (Tr. 346–47).

On July 27, 2010, Psychology medical consultant R. Nobel completed a Psychiatric Review Technique form, and determined that Plaintiff had disorder adjustment disorder, disorder ETOH, Cannabis and cocaine dependence, as well as mild limitations in her daily living, social functioning, and maintaining concentration, persistence, and pace. (Tr. 360). Nobel also completed a Mental Residual Functional Capacity Assessment, where Nobel opined that Plaintiff was moderately limited in her ability to carry out detailed instructions and respond appropriately to work-place changes. (Tr. 364–65).

On July 30, 2010, Licensed Master Social Worker Crystal Keefer at UHS noted that Plaintiff had diagnoses of Major Depressive Disorder of recurrent and moderate severity, and Polysubstance Dependence. (Tr. 418). Plaintiff treated with Ms. Keefer again on September 2, 2010, and Ms. Keefer noted Plaintiff appeared "depressed and in physical pain as evidenced by shifting in her seat and walking slowly." (Tr. 413). On September 17, 2010, Ms. Keefer noted Plaintiffs thought process indicated worthlessness, and her mood was depressed. (Tr. 407).

On November 11, 2010, Ms. Snow–Holmes assessed Plaintiff with major depression and rheumatoid arthritis. (Tr. 459). On December 9, 2010, Ms. Keefer noted Plaintiff's mood and affect were depressed. (Tr. 512–13). Ms. Snow–Holmes treated Plaintiff for tension headaches. (Tr. 453).

On December 14, 2010, Dr. Coca treated Plaintiff for pain in Plaintiff's back, knees, and stiff neck, and delivered a steroid injection. (Tr. 526–28). In a follow-up visit on January 25, 2011, Dr. Coca recommended physical therapy for Plaintiffs ongoing back pain. (Tr. 525).

Ms. Snow–Holmes treated Plaintiff on January 26, 2011, and assessed Plaintiff with back pain with radiation, but noted that Plaintiff looked well and walked with a normal gait; showing a normal range of motion through her arms, legs, and spine. (Tr. 451).

On April 13, 2011, Dr. Coca assessed possible fibromyalgia because Plaintiff reported she was "hurting all over with a flu-like illness." (Tr. 522–23).

On June 28, 2011, Dr. Dawood noted Plaintiff had a chronic condition as a result of her substance dependence and depressive disorder, and would benefit from medication. (Tr. 476–78).

Ms. Snow–Holmes assessed Plaintiff on June 29, 2011, with rheumatoid arthritis and back pain with radiation that was often debilitating because of her arthritis. (Tr. 443–44). On June 30, 2011, Ms. Snow–Holmes completed a Functional Capacities Evaluation and opined that Plaintiff, in one day, should sit for one hour in an eight hour workday, stand up to one hour, walk no more than one hour, and change her position every 20 minutes. (Tr. 468). Ms. Snow–Holmes also noted Plaintiff could not squat, crawl, work in unprotected heights, stoop, reach above her left shoulder, or push/pull with her left hand. (*Id.*). Ms. Snow–Holmes stated Plaintiff could lift up to five pounds, but should never lift more than six pounds. (*Id.*). She diagnosed chronic pain of the joints due to rheumatoid arthritis, peripheral artery disease, and Reynaud's syndrome. (Tr. 469).

On July 12, 2011, Dr. Coca completed an Arthritis Medical Source Statement, and while she reported she does not typically make assessments on patients' physical capabilities, she did note that Plaintiff's condition could cause her to miss more than four days of work per month. (Tr. 515–18).

### D. Determining Disability Under the Social Security Act and the ALJ's Decision

■ The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin*, No. 13–CV–638A, 2014 WL 950141, at *6, 2014 U.S. Dist. LEXIS 33168, at *17–18 (W.D.N.Y. Mar. 11, 2014). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if her impairment is of such severity that she is unable to do her previous work and cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

■ In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

Here, in applying the five-step sequential evaluation, ALJ Fuller made the following determinations. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 22, 2010, the date of her application. (Tr. 27). At the second step, the ALJ found that Plaintiff Has the following severe impairments: rheumatoid arthritis, fibromyalgia, depression, anxiety, and substance addiction disorder. (*Id.*). The ALJ also found that Plaintiff had a non-severe impairment of asthma and a non-medically determinable impairment of heart palpitations. (Tr. 27–28). At the third step, the

ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment or combination of impairments that would render her disabled. (Tr. 28). Accordingly, at the fourth step, the ALJ determined Plaintiff's residual functional capacity to perform work. (Tr. 31). The ALJ concluded that plaintiff had the following RFC:

> [t]o perform light work as defined in 20 CFR 416.967(b) except frequent foot control operation with both legs; never climb ramps or stairs; never climb ladders, ropes or scaffolds; never balance; occasionally stoop, crouch, kneel or crawl; occasional handling objects, that [is] gross manipulation, with both hands; occasional fingering, that is fine manipulation, of items no smaller than the size of a paper clip; avoid moderate exposure to irritants such as fumes, odors, dust, and gases; avoid moderate exposure to poorly ventilated areas; able to remember and carry out one- to two-step instructions; and able to perform simple, routine, repetitive tasks.

(*Id.*).

The ALJ then proceeded to the fifth step, which is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications by considering her physical ability, age, and education. (Tr. 36). At the time the application was filed, Plaintiff was 45 years old, she had a limited education, and she could not perform her past work. (*Id.*). Second, the ALJ determined whether there were jobs existing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (Tr. 36–37). ALJ Fuller found that plaintiff's ability to perform the requirements of light work were impeded by her physical and mental limitations, but, based on the VE's testimony, the ALJ found that Plaintiff was still able to work. (*Id.*). Relying on the VE's testimony, the ALJ stat-ed that Plaintiff was able to perform light, unskilled jobs in the national economy, including rental clerk, gate attendant, and usher/lobby attendant. (Tr. 37).

## III. DISCUSSION

### A. Standard of Review

■ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, 2014 U.S. Dist. LEXIS 41413, at *24 (S.D.N.Y. Sept. 16, 2013) (quoting 42 U.S.C. § 405(g)). Title 42 U.S.C. section 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

■ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiffs claim, and whether the Commissioner's findings were supported by substantial evi-

dence on the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996).

■ Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988).

### B. The ALJ's Residual Functional Capacity is supported by substantial evidence.

Plaintiff alleges that "the ALJ erred by failing to properly analyze the opinion of NP Snow–Holmes, thereby failing to support her residual functional capacity ("RFC") by substantial evidence." (Dkt. 8 at 11). ALJ Fuller assigned "no weight" to the opinion of Nurse Practitioner Karen Snow–Holmes because the opinion was "by a non-acceptable medical source and the medical evidence of record does not indicate that [Plaintiff] should be so limited." (Tr. 35.)

■ Nurse practitioners are considered non-acceptable medical sources. SSR 06–03p, 2006 SSR LEXIS 5, at *4 (S.S.A. Aug. 9, 2006). However, the opinions of non-acceptable medical sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* SSR 06–03p states that an ALJ should apply the same factors to analyze the opinion of a non-acceptable medical source as would be used to analyze the opinion of an accept-

able medical source. *Id.* at *6. These factors include:

(1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with the other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion.

*Id.* at *11. Accordingly, although a nurse practitioner's opinion is not entitled to the same weight as a treating physician, these opinions are entitled to "some extra consideration," when the nurse practitioner has a treating relationship with the patient. *Mongeur,* 722 F.2d at 1039 n. 2. SSR 06–03p further directs that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 SSR LEXIS 5, at *15–16.

■ As Plaintiff notes, she has been treated regularly at Westside Health Services since at least December 16, 2008, and Ms. Snow–Holmes has treated Plaintiff on at least ten of these visits. (Dkt. 8 at 12–13). Ms. Snow–Holmes noted that Plaintiff had rheumatoid arthritis on November 11, 2010, and treated her on January 26, 2011, for radiating back pain. (Tr. 443, 451, 459). On June 29, 2011, Ms. Snow–Holmes treated Plaintiff for rheumatoid arthritis and back pain that was "debilitating [because] of her arthritis." (Tr. 459). Ms. Snow–Holmes was one of Plaintiff's

primary sources of medical treatment from November 2010 through June 2011, and prescribed medications for Plaintiff. (Tr. 208–13,290, 463).

Plaintiff contends that Ms. Snow–Holmes' opinion is consistent with the record, and particularly is consistent with the opinion of Dr. Picinich, who the ALJ assigned "great weight." (Dkt. 8 at 13). Specifically, Plaintiff argues that Ms. Snow–Holmes' opinion that Plaintiff could not squat, crawl, stoop, reach, etc. is similar to Dr. Picinich's findings that Plaintiff had mild to moderate limitations in these areas. (Dkt. 8 at 13) (citing Tr. 468, 348–49). This argument is facially flawed. An opinion that an individual cannot do something is dissimilar to an opinion that an individual has mild to moderate limitations. Plaintiff also notes that Ms. Snow–Holmes' opinion that Plaintiff could not lift more than five pounds is supported by Plaintiff's testimony that she could lift a five pound bag of sugar on a good day, but no more than two or three pounds on a bad day. (Dkt. 8 at 13) (citing Tr. 468, 56).

Although the ALJ did not explicitly follow all of the factors of SSR 06–03p in rejecting the nurse practitioner opinion, she did explain her rejection with enough specificity to make it clear to a reviewer of the record her reasons for rejecting the opinion. *Mongeur,* 722 F.2d at 1040 ("Where … the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient.…"). Also, the ALJ specifically referenced at least one of the factors—the consistency of the opinion with the record as a whole—in supporting her decision. (Tr. 35). *Cf. Barnes v. Astrue,* No. 1:11–CV–00036, 2014 WL 297099, at *9–10, 2014 U.S. Dist. LEXIS 10325, at

*25–26 (W.D.N.Y. Jan. 6, 2014) (finding it was an abuse of discretion for the ALJ to "summarily discount" nurse practitioner's assessment in favor of a consultative examiner's opinion solely because she was a nurse).

Ms. Snow–Holmes' opinion was overly restrictive, and was inconsistent with not only Dr. Picinich's opinion, but also her own physical examinations. *See Hudson v. Colvin,* No. 5:12–44, 2013 WL 1500199, at *11, 2013 U.S. Dist. LEXIS 51327, at *36 (N.D.N.Y. Mar. 21, 2013) (finding ALJ "committed no legal error" in rejecting the opinion of the plaintiff's treating social worker in light of the conflicting opinions of a consultative psychologist and State agency medical consultant); *Feliciano v. Comm'r of Soc. Sec.,* 2011 WL 6399512, at *5–6, 2011 U.S. Dist. LEXIS 147071, at *14–15 (S.D.N.Y. Dec. 20, 2011) (finding ALJ did not err in affording "little weight" to treating nurse practitioner's opinion where the opinion was contradicted by the nurse practitioner's own treatment notes, as well as the opinions of other acceptable medical and consultative examiners). The ALJ explicitly addressed Ms. Snow–Holmes' observations that Plaintiff's physical examinations showed that her pain was tolerable. (Tr. 35) (*see e.g.,* Tr. 451, 453, 455, 457). In her treatment notes, Ms. Snow–Holmes indicates, *inter alia,* that Plaintiff appeared well, had a normal gait, looked comfortable, and had a normal grip. (Tr. 303, 315, 447, 451, 453, 455, 457, 459). Indeed, on one visit, Ms. Snow–Holmes stated "pt has claim that her RA is chief cause of her disability … seems to move about w/o difficulty.…" (Tr. 443).

As a result of these considerations, the RFC finding was supported by substantial evidence. For example, consultative orthopaedist Dr. Picinich assessed Plaintiff with mild-to-moderate limitations in sitting, standing, and kneeling; moderate

limitations in walking, climbing stairs, bending, lifting, carrying, reaching, and handling very heavy objects; and moderate limitations in traveling, due to the multiple joint pain and difficulty with the left wrist and hand. (Tr. at 348–49). "[A] consultative physician's opinion may serve as substantial evidence in support of an ALJ's decision." *Mongeur*, 722 F.2d at 1039.

Additionally, Dr. Nobel, a state agency psychological consultant, assessed that Plaintiff had no significant limitations in understanding, remembering, or carrying out simple instructions. (Tr. 350–63). The ALJ was entitled to rely upon this opinion pursuant to 20 C.F.R. § 416.912(b)(6).

Accordingly, the Court finds that the ALJ did not err in discrediting Ms. Snow–Holmes' opinion.

### C. The ALJ's Credibility Determination is supported by substantial evidence.

Plaintiff argues that the ALJ did not properly consider her testimony concerning her physical limitations in finding that Plaintiff's testimony was not entirely credible. (Dkt. 8 at 14–16).

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.*, No. 1:05–CV–0588 (NPM/VEB), 2009 U.S. Dist. LEXIS 120427, at *10 (N.D.N.Y. Nov. 23, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting

effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

In the instant case, the ALJ applied the two-step analysis and found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 32).

In considering Plaintiff's testimony, the ALJ stated: "evidence regarding the claimant's activities of daily living is not inconsistent with the residual functional capacity. The claimant testified that she lives by herself, that she does the household chores and shops, and that she goes to her mother's house." (Tr. 34). Plaintiff contends the ALJ failed to consider Plaintiff's testimony that she had difficulty reading for pleasure because she was always in pain and had a hard time concentrating, and testimony that doing basic things like getting dressed could be a struggle. (Dkt. 8 at 14–15) (citing Tr. 49–52). Plaintiff noted she could only wear shirts with built-in bras because she could not reach the clasps, and she could only wear flip-flops because she could not tie her shoes. (*Id.*). (citing Tr. 52). Plaintiff also contends that the ALJ did not specifically state how Plaintiff's abilities to perform household chores or go to her moth-

er's house would demonstrate Plaintiff's ability to consistently work. (*Id.* at 15).

However, the evidence of record shows that Plaintiff was able to engage in more activities of daily living than Plaintiff now claims, including testimony from Plaintiff that she showered and dressed herself; cooked; house cleaned; did her laundry, albeit with some help; read; managed money; watched television; used public transportation; and socialized. (Tr. 342, 346–47). Plaintiff also indicated that she fished and gardened. (Tr. 342).

 Indeed, "[i]t is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Stoesser v. Comm'r of Soc. Sec.*, No. 08–CV–643, 2011 WL 381949, at *7, 2011 U.S. Dist. LEXIS 10396, at *19 (N.D.N.Y. Jan. 19, 2011) (quoting *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y.2000)). However, evidence that a claimant is capable of engaging in varied activities despite allegations of severe pain is supportive of a conclusion that her alleged symptoms are not disabling. *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *see also, Carter v. Astrue*, No. 11 Civ. 2517, 2013 WL 1499414, at *17–18, 2013 U.S. Dist. LEXIS 53407, at *52–53 (S.D.N.Y. Jan. 22, 2013) (finding plaintiff's testimony that he could only sit or stand for 15–20 minutes and could only lift the weight of a pillow was inconsistent with daily activities like cooking, cleaning, and attending church services, and therefore the ALJ properly discredited this testimony). It is within the ALJ's discretion to evaluate the credibility of the plaintiff's testimony and render an independent judgment in light of the evidence of record as to the true extent of the plaintiffs symptoms. *Mimms v. Sec'y of*

*Health and Human Servs.*, 750 F.2d 180, 186 (2d Cir.1984).

Plaintiff also claims that it was erroneous for the ALJ to find that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Dkt. 8 at 16). Plaintiff argues that the ALJ is not permitted to utilize this language because it indicates that the ALJ found the claimant's statements are not credible because they are inconsistent with the ALJ's own RFC finding. (*Id.*) (citing *Gehm v. Astrue*, No. 3:10–CV–1170, 2013 WL 25976, at *5, 2012 U.S. Dist. LEXIS 183103, at *15 (N.D.N.Y. Dec. 28, 2012); *Norman v. Astrue*, 912 F.Supp.2d 33, 44 (S.D.N.Y.2012)).

 This argument has been rejected by this Court. *See Diakogiannis v. Astrue*, 975 F.Supp.2d 299, 318–19 (W.D.N.Y. 2013) (determining the ALJ's credibility assessment was supported by substantial evidence where the ALJ assessed the plaintiff's subjective complaints "in the context of a comprehensive review of the entire medical record," despite the use of the boilerplate language that the plaintiff's complaints were "inconsistent with the above residual functional capacity"); *Luther v. Colvin*, No. 12–CV–6466, 2013 WL 3816540, at *8, 2013 U.S. Dist. LEXIS 102062, at *20–21 (W.D.N.Y. July 22, 2013) (finding ALJ properly assessed plaintiff's credibility despite boilerplate language in opinion that plaintiff's alleged symptoms were "inconsistent with the above residual functional capacity"). Indeed, courts in this Circuit have stated that it is inappropriate for an ALJ to base his or her credibility determination "solely upon whether the ALJ deems the claimant's allegations to be congruent with the ALJ's own RFC finding." *Burton v. Colvin*, No. 6:12–CV–

6347(MAT), 2014 WL 2452952, at *11, 2014 U.S. Dist. LEXIS 75154, at *29 (W.D.N.Y. June 2, 2014). "Read in context, however, this statement does not [necessarily] indicate that the RFC assessment was a basis for a finding of lack of credibility." *Briscoe v. Astrue*, 892 F.Supp.2d 567, 585 (S.D.N.Y.2012); *see also Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12–CV–1632(MAD), 2014 WL 420465, at *7, 2014 U.S. Dist. LEXIS 13442, at *22 (N.D.N.Y. Feb. 4, 2014) ("this erroneous boilerplate language does not merit remand if the ALJ offers specific reasons to disbelieve the claimant's testimony") (internal quotation. omitted).

In the instant case, Plaintiff takes the ALJ's boilerplate language out of context. "[I]t is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with his RFC determination .... though, '[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.' " *Kunkel v. Comm'r of Soc. Sec.*, No. 12–CV–6478, 2013 WL 4495008, at *3, 2013 U.S. Dist. LEXIS 117911, at *58–59 (W.D.N.Y. Aug. 20, 2013) (quoting *Wischoff v. Astrue*, No. 08–CV–6367, 2010 WL 1543849, at *7, 2010 U.S. Dist. LEXIS 37961, at *7 (W.D.N.Y. Apr. 16, 2010)). In cases finding the use of the boilerplate language to be inappropriate, the ALJ has typically failed to explain his or her rationale for finding the plaintiff's testimony to be less credible. *See, e.g., Stack v. Colvin,*

No. 12–CV–1031S, 2014 WL 2435352, at *4, 2014 U.S. Dist. LEXIS 74606, at *10 (W.D.N.Y. May 30, 2014) ("the ALJ's rationale for marginalizing [the plaintiff's] opinion to the extent it conflicted with the ALJ's own RFC assessment is not readily apparent from the decision....").

Here, the ALJ properly explained why she found that Plaintiff's testimony was not entirely credible because she considered Plaintiff's testimony as part of her RFC analysis. In formulating her RFC, the ALJ did explicitly consider Plaintiff's testimony. The ALJ considered the objective medical evidence, Plaintiff's activities of daily living, medications, treatment history, and allegations, as well as the opinions of treating and non-treating physicians. (Tr. 31–35). The ALJ also explicitly stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96–4p and 96–7p." (Tr. 31). Further, in her discussion of Plaintiff's testimony, the ALJ noted "evidence regarding the claimant's activities of daily living is not inconsistent with the residual functional capacity. The claimant testified that she lives by herself, that she does the household chores and shops, and that she goes to her mother's house." (Tr. 34). The ALJ then proceeded to discuss medical opinions in the record. (*Id.*).[3]

Despite the use of boilerplate language, the ALJ thoroughly discussed Plaintiff's testimony and the evidence in the medical record that the ALJ believed contradicted

---

**3.** The Administrative Record also includes a physical RFC report dated July 28, 2010, from Dr. J. Hughes. (Tr. 77). Dr. Hughes opines: "The claimant's allegations of limitations secondary to the symptoms associated with the MDI are considered partially credible in that

they can be reasonably attributed to the MDI, however the alleged severity of symptoms and associated limitations are not consistent with the comprehensive medical evidence, therefore considered not credible." (*Id.*).

Plaintiff's testimony. As a result, the Court finds that the ALJ did not err in conducting her credibility analysis.

### D. The ALJ did not err in relying on vocational expert testimony to find that there are other jobs in the national economy that Plaintiff can perform.

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform jobs in the national economy because the vocational expert responded to an incomplete hypothetical question as a result of the ALJ's alleged errors in determining Plaintiff's RFC and credibility. (Dkt. 8 at 16–17).

At step five of the analysis, the burden shifts to the Commissioner to demonstrate that there are a substantial number of jobs available in the national economy for Plaintiff to perform. *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir.1998). The Commissioner will utilize the Medical Vocational Guidelines or "grids" found at 20 C.F.R. Part 404, Subpart P, Appendix 2. *Pratts v. Chater*, 94 F.3d 34, 38–39 (2d Cir.1996). However, "if a claimant has nonexertional impairments which 'significantly limit the range of work permitted by his exertional limitations,' then the Commissioner cannot rely upon the grids, and instead 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain or perform.'" *Griffith v. Astrue*, No. 08–cv–6004, 2009 WL 909630, at *4, 2009 U.S. Dist. LEXIS 27533, at *12 (W.D.N.Y. Mar. 30, 2009) (citing *Pratts*, 94 F.3d at 39).

Having properly determined Plaintiff's residual functional capacity, "[the ALJ] did not err in using that residual functional capacity to determine (with the help of a vocational expert) whether jobs existed in the national economy" that Plaintiff could perform. *Pellam v. Astrue*, 508 Fed.Appx. 87, 91 (2d Cir.2013); *see also Ridgeway v. Colvin*, No. 12–CV–6548T, 2013 WL 5408899, at *10, 2013 U.S. Dist. LEXIS 137445, at *30–31 (W.D.N.Y. Sept. 25, 2013) ("Because there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy.").

### CONCLUSION

For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.