Ritchie **SMITH**, Plaintiff,

v.

Nancy A. **BERRYHILL**, Acting Commissioner of Social Security, Defendant.

**CIVIL ACTION NO. 3:15–00799–WGY**

United States District Court,
N.D. New York.

June 5, 2017

Filed 6/6/2017

Peter Gorton, Lachman, Gorton Law Firm, Endicott, NY, for Plaintiff.

David Brown, June Byun, Social Security Administration Office of Regional General Counsel, New York, NY, for Defendant.

## MEMORANDUM & ORDER

YOUNG, D.J.[1]

## I. INTRODUCTION

Ritchie Smith ("Smith") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking this Court's review of the decision of the Commissioner of the Social Security Administration (the "Commissioner")[2] denying Smith both disability insurance and Supplemental Security Income benefits (collectively, "benefits"). Compl. ¶ 1; ECF No. 1. Smith contends that the Commissioner's decision applies incorrect legal standards and is not supported by substantial evidence. Id. ¶ 7. Specifically, Smith argues that the decision incorrectly concludes that he could engage in substantial gainful activity despite his physical and mental impairments. Pl.'s Br. Pursuant General Order No. 18 ("Pl.'s Br.") 11–23, ECF No. 16. Smith also asserts that his daily activities were wrongfully used against him in assessing his residual functional capacity ("RFC"), credibility, and limitations. Id. at 22–23. The Commissioner counters that because the decision applies the correct legal standards and is based on substantial evidence, this Court ought affirm the decision. Def.'s Br. Pursuant General Order No. 18 ("Def.'s Br.") 1, ECF No. 21. Following an extensive review of the administrative record, this Court affirms the Commissioner's decision.

### A. Procedural History

Smith initially protectively filed for benefits on June 4, 2009. Admin. R. 198.[3] In

---

1. Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 23.

2. Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration, and thus is substituted for Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

3. The administrative record spans multiple docket entries labeled ECF Nos. 11–1 through 11–16. For the sake of simplicity, this Court cites to the continuously paginated record

his application, Smith alleged that he was disabled due to an injury in his left knee and mental depression. Id. at 203. This application was denied on July 30, 2009. Id. at 79, 83–84.

Smith then requested a hearing by a hearing officer,[4] id. at 85–86, which was held on February 28, 2011, id. at 41. Following the hearing, the hearing officer issued a decision again denying Smith benefits. Id. at 16, 19–34. Smith administratively appealed this decision, id. at 13–14, but the Appeals Council denied the request for review, id. at 1, 7.

Following this denial, Smith sought judicial review of the decision, and the United States District Court for the Northern District of New York subsequently remanded the case. Id. at 754–90. The Appeals Council sent the case back to a hearing officer, id. at 750, who held a hearing, id. at 791–831, and then denied Smith benefits on April 29, 2015, id. at 714, 717–36. The hearing officer's April 29, 2015 decision became final on June 29, 2015. See id. at 715.

This action, filed July 30, 2015, appeals that decision. Compl. ¶¶ 2–3. The Commissioner has filed an answer, Def.'s Answer, ECF No. 9, and the administrative record, Certification, ECF No. 11, and both parties have briefed the issues, Pl.'s Br.; Def.'s Br. After hearing oral argument on January 31, 2017,[5] this Court took the matter under advisement. Minute Entry, Jan. 31, 2017.

## B. Factual Background

Smith was born November 19, 1967. Admin. R. 198. He completed high school in 1986 and is trained in tractor trailer driving. Id. at 209. While in the workforce, Smith did manufacturing piece work for approximately five years and worked as a cleaner in a hospital for seven years and in two retail stores for periods of one and three months. Id. at 204. Smith also served as a sanitation worker for approximately six years, and, most recently, as a truck driver trainee from August 20–23, 2008, id., after which he allegedly stopped working because he could not physically do the work, id. at 47. Smith alleges that his disability began on February 15, 2009, when he could not get out of bed due to back pain. Id. at 45, 49.

### 1. Medical Evidence

Smith alleges that he suffers from obesity, Pl.'s Br. 1–2, a left knee injury, id. at 2–3, acute thoracic strain with spasms, id. at 3, fibromyalgia, id. at 5, carpal tunnel syndrome, id. at 6, depression and Bipolar II disorder, id. at 7–8, and sleep apnea, id. at 8.[6] Of the plethora of medical evidence contained in the administrative record, the most relevant are: (1) a medical source statement prepared by Dr. Datta after a consultative orthopedic examination on July 14, 2009, Admin. R. 493–96, (2) Physical Therapist Mansfield's April 2011 assessment, id. at 1989–93, (3) a consultative physical examination by Dr. Jenouri from April 2013, id. 1890–94, (4) Dr. Federowicz's January 2009 opinion, id. at 455–62,

---

and omits references to specific ECF numbers.

4. For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, 164 F.Supp.3d 249, 251 n.1 (D. Mass. 2016).

5. This Court has commenced giving oral hearings in Social Security cases. See Mauro King v. Berryhill, No. 15-00285-WGY, 251

F.Supp.3d 438, 441 n.5, 2017 WL 1753442, at *1 n.5 (N.D.N.Y. Apr. 14, 2017), for an explanation of this change.

6. Because Smith does not challenge the hearing officer's determination of any of Smith's impairments or their severity, this section omits a detailed discussion of the various alleged ailments.

(5) Dr. Schulman's April 2009 opinion, id. at 463–66, (6) Dr. Wacendak's medical source statement, id. at 595–600, (7) Dr. Mikloucich's July 2014 assessment and accompanying treatment records, id. at 2099–2101, 2159–81, (8) Dr. Wiesner's treatment notes, id. at 664–65, 667–68, 1610, 1622, 1624, 1827, 1835–36, 1838, 1840, 1843–45, 2039, 2046, 2058–59, 2089–91, (9) Dr. Fang's various treatment notes and statements, id. at 542–44, 1986–88, (10) Dr. Noia's consultative psychiatric examination of Smith, id. at 497–500, (11) Dr. Loomis's psychiatric evaluation, id. at 1895–99, (12) Dr. Russell's psychological evaluation, id. at 467–70, (13) Dr. Harding's July 2009 mental RFC assessment, id. at 515–18, (14) Nurse Practitioner Cron's treatment notes, id. at 1851–73, 2184–98, and (15) an assessment by Dr. Legg and Ms. Hubbard, id. at 2182–83.

In his medical source statement, Dr. Datta reported that Smith has "no limitations with his speech or hearing" nor "upper extremities for fine and gross motor activities"; but has "[m]ild to moderate limitations for sitting" and frequently needs to change positions; "[m]oderate to marked limitations for standing and walking"; "[m]arked limitations for climbing"; and cannot squat, kneel, or do any heavy lifting or carrying. Id. at 495.

Physical Therapist Mansfield ran a series of tests on Smith and concluded that he "appear[s] capable of performing sedentary to light work," but "should avoid carrying weight," "regular lifting[,] and bending"; should not "squat[ ] or kneel[ ]"; and should "minimize standing and climbing and ... change static position every 30 minutes." Id. at 1989–90.

Dr. Jenouri's medical source statement concluded that Smith has a "[m]ild restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting, and carrying," and that Smith "is restricted from mild or greater exertion." Id. at 1894.

Dr. Federowicz opined on January 22, 2009, that Smith does not have severe symptoms and has "a moderate amount of disability from his knee difficulties," but "is capable of performing a sit-down job as well as a sedentary type of job with regards to his lower extremities," and "would be served with weight loss." Id. at 455. Dr. Federowicz's April 2009 Worker's Compensation Evaluation indicated that he believed Smith has "50% or Moderate Disability." Id. at 2031.

Dr. Schulman conducted an independent medical examination of Smith in April 2009. Id. at 463. Following the examination, Dr. Schulman opined that Smith "has a partial, moderate disability referable to the left knee." Id. at 465. Dr. Schulman noted that Smith "cannot do prolonged standing or walking or ladder climbing, kneeling, jumping or stair climbing," and "is confined to a sedentary position." Id. Regardless, Dr. Schulman opined that Smith "can only return to work in a light duty capacity," and "basically would have to do sedentary work only." Id.

In his medical source statement, Dr. Wacendak assessed a number of physical limitations. Id. at 595–600. In regards to lifting and carrying, Dr. Wacendak noted that his assessments were "Per PT's Report Not tested." Id. at 595. Dr. Wacendak then marked that Smith can occasionally lift up to ten pounds and eleven to twenty pounds, as well as carry up to ten pounds, but that Smith can never lift or carry more. Id. The doctor also assessed Smith's ability to do work-related activities, noting that "Per PT's Report," Smith can sit, stand, or walk for less than an hour at one time without interruption, and that Smith "Reports [that] He can Do Nothing to Get Comfortable" in response to the total amount of time that Smith can sit, stand,

or walk in an eight hour work day. Id. at 596. Dr. Wacendak then indicated that Smith can frequently control his left and right foot; can never climb ladders or scaffolds, balance, kneel, crouch, or crawl, but can occasionally stoop; and that no impairments affect Smith's hearing or vision. Id. at 597–98. Dr. Wacendak also remarked that Smith can never tolerate exposure to unprotected heights, moving mechanical parts, or extreme heat; but could occasionally tolerate exposure to operating a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, and vibrations. Id. at 599. Dr. Wacendak indicated that Smith can tolerate moderate noise, such as in an office, and can "perform activities like shopping," "travel without a companion for assistance," "ambulate without using a wheelchair, walker, or 2 canes or 2 crutches," "walk a block at a reasonable pace on rough or uneven surfaces," "use standard public transportation," "climb a few steps at a reasonable pace with the use of a single handrail," "prepare a simple meal [and] feed himself," "care for [his] personal hygiene," and "sort, handle, or use paper/files." Id. at 599–600.

In July 2014, Dr. Mikloucich completed an assessment of Smith. Id. at 2099–2101. On the form, Dr. Mikloucich indicated that Smith's conditions would cause Smith pain and fatigue and require Smith to need to rest at work, as well as diminish Smith's work pace. Id. at 2099. The doctor also stated that the conditions, pain, and side effects of medication would not diminish Smith's concentration. Id. Dr. Mikloucich indicated that Smith's conditions would produce good and bad days for Smith, leading him to miss two days of work per month, and that he would be off task fifteen to twenty percent of the work day. Id. at 2099–2100. Dr. Mikloucich noted that he believed Smith to be obese, and that Smith's obesity exacerbates his fatigue, ability to sustain work pace, lifting, sitting,

standing, walking, and pain. Id. at 2100–01. Dr. Mikloucich also submitted a series of Smith's treatment records, id. at 2153–81, in which Dr. Mikloucich stated that he "do[es] not feel [Smith] qualifies for disability" and "feel[s] his back pain would improve with regular exercise and weight loss," id. at 2181.

Dr. Wiesner treated Smith for knee replacements. See id. at 664–65, 667–68, 1610, 1622, 1624, 1827, 2039–41, 2089. In an assessment completed in September 2014, Dr. Wiesner indicated that Smith's conditions would cause pain and fatigue, diminish concentration and work pace, and cause Smith to need to rest at work. Id. at 2089. The doctor concluded that Smith would be off task more than thirty-three percent of the day and have good and bad days, leading to Smith missing more than four days of work per month. Id. at 2089–90. Dr. Wiesner indicated that Smith can sit for two hours and stand for one hour out of an eight hour workday, and that Smith should alternate between sitting and standing every thirty minutes. Id. at 2090. Dr. Wiesner marked that Smith can lift up to five pounds for three to eight hours per day, five to ten pounds for up to three hours per day, and should not lift over ten pounds at all. Id. Dr. Wiesner also indicated that Smith is obese and that his obesity exacerbated all of his functional disabilities. Id. at 2090–91.

Dr. Fang, Smith's treating pain management physician, completed an assessment of Smith in January 2011. Id. at 542–44. On the questionnaire, Dr. Fang indicated that Smith would need a ten minute rest period every hour at a minimum, and that Smith's medical condition would likely result in four or more absences from work per month. Id. at 542. Dr. Fang noted that Smith's condition impacts sitting, standing, and walking, and that that Smith can stand for at least two hours and sit for six hours

in an eight hour day, but would need to alternate between sitting and standing. Id. at 542–43. Dr. Fang also noted that Smith can lift five to ten pounds for up to three hours per day and that Smith's concentration and ability to sustain work pace are severely impacted by Smith's medical condition. Id. at 543.

Dr. Fang completed another assessment in July 2014. Id. at 1986–88. He indicated that Smith's conditions would cause pain and fatigue, diminished concentration and work pace, and would cause Smith to need to rest at work. Id. at 1986. Dr. Fang additionally noted that Smith would be off task between twenty and thirty-three percent of a work day. Id. She indicated that Smith's conditions would cause good and bad days, resulting in Smith missing more than four days of work per month. Id. at 1986–87. Dr. Fang further noted that Smith can sit for approximately four hours and stand or walk for approximately two hours of an eight hour work day, and would need to change positions every hour. Id. at 1987. The doctor also indicated that Smith can lift over ten pounds for up to three hours a day and that Smith's obesity exacerbated all of his functional disabilities. Id. at 1987–88.

In July 2009, Dr. Noia completed a psychiatric evaluation of Smith, id. at 497–500, concluding that, from a vocational standpoint, Smith seems "capable of understanding and following simple instructions and directions," "performing simple and some complex tasks with supervision and independently," "maintaining attention and concentration for tasks," "learning new tasks," "making appropriate decisions," "relat[ing] . . . and interact[ing] moderately well with others," and "regularly attend[ing] to a routine and maintain[ing] a schedule," id. at 499–500. Dr. Noia also noted that Smith "appears to be having some difficulty of dealing with stress," and that the examination results are consistent with mild depression. Id. at 500. Dr. Noia diagnosed Smith with adjustment disorder with depressed mood and recommended that Smith seek treatment for his depressive symptoms, stating that he "hoped that with intervention and support, [Smith] will find symptom relief and maximize his abilities." Id.

Dr. Loomis completed a psychiatric evaluation of Smith in April 2013. Id. at 1895–99. Dr. Loomis noted that Smith's thought processes are "[c]oherent and goal directed," attention and concentration is intact, recent and remote memory skills are mildly impaired, cognitive functioning is average to below average, and insight and judgment are fair. Id. at 1896–97. Dr. Loomis's medical source statement indicated that Smith "exhibit[s] no impairment in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and learn new tasks," although Smith "exhibit[s] moderate impairment in his ability to perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress." Id. at 1897–98. The doctor noted that Smith's psychiatric problems "may significantly interfere with [Smith]'s ability to function on a daily basis." Id. at 1898. In the evaluation, Dr. Loomis included that Smith "stated that he dresses, bathes, and grooms himself daily"; "typically spends his day watching television, running errands, and going to his doctor appointments"; "cook[s] three times a week" and "shops twice a week"; "can manage his own money," "take public transportation," and "drive, although he does not because it is painful"; "can complete general cleaning and laundry; however, he gets help with that due to the pain"; and "socializes with friends and family," with whom he maintains good or very good relationships. Id. at 1897.

Dr. Russell completed a psychological evaluation of Smith in June 2009, id. at 467–70, and diagnosed Smith with major depressive disorder, single episode, moderate, id. at 470. He noted that "Smith is work limited and will require extra supports to help him become employed again," and that "[f]inding a position driving a bus or small truck might be a reasonable place to begin." Id. He also recommended that Smith would benefit from mental health services, as well as potentially antidepressants and attending a weight reduction group, but that "[g]etting back to work will be the best 'medicine' for him." Id.

Nurse Practitioner Cron submitted treatment notes compiled over numerous sessions with Smith from April 2012 to May 2014. Id. at 1851–73, 2184–98. In April 2012, Nurse Practitioner Cron noted that Smith's "[m]ood improved," and that he is "finding group and individual counseling useful." Id. at 1856. In June 2012, when Smith stated " 'I feel ... a little better. I am using the skills I am learning to not let me [sic] depression control me,' " Nurse Practitioner Cron noted that Smith's "depression [was] clearly linked to pain." Id. at 1862–63. In July 2012, Nurse Practitioner Cron reported that Smith "finds his moods [sic] symptoms are well controlled with depakote." Id. at 1865. In September 2012, Nurse Practitioner Cron assessed that Smith was responding appropriately to stressors and any "manic symptoms [were] resolved on depakote." Id. at 1871. In September 2013, Smith reported no depression and that he was " 'doing pretty well.' " Id. at 2196. In November 2013, Smith again reported no depression and said "I am doing good." Id. at 2193. In January 2014, Smith stated that he was "doing good," with no depression, and Nurse Practitioner Cron described Smith as being "[f]uture focussed [sic] and motivated." Id. at 2190. In April 2014, Smith again reported no depression, although Nurse Practitioner Cron noted that

Smith was "worried about his mother who is hospitalized ... and not expected to do well." Id. at 2187. Nurse Practitioner Cron's final treatment note from May 2014 states that Smith "report[ed] no depression just some understandalbe [sic] grief" following his mother's death. Id. at 2184.

Dr. Harding completed a mental RFC assessment of Smith in July 2009. Id. at 515–18. He indicated that Smith is not significantly limited in the abilities to "remember locations and work-like procedures"; understand, remember, and carry out both "very short and simple instructions" and "detailed instructions"; "maintain attention and concentration for extended periods"; "sustain an ordinary routine without special supervision"; "work in coordination with or proximity to others without being distracted by them"; "make simple work-related decisions"; "interact appropriately with the general public"; "ask simple questions or request assistance"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with co-workers or peers without distracting them or exhibiting behavioral extremes"; "maintain socially appropriate behavior and ... adhere to basic standards of neatness and cleanliness"; "respond appropriately to changes in the work setting"; "be aware of normal hazards and take appropriate precautions"; "travel in unfamiliar places or use public transportation"; and "set realistic goals or make plans independently of others." Id. at 515–16. Dr. Harding assessed that Smith is moderately limited in his "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods." Id. He concluded that Smith "retains the capacity for unskilled work," specifying that Smith "retains the capacity for understanding, remembering, and carrying out simple instructions, adapting to changes in the workplace, making simple decisions, and responding appropriately to supervisor or coworkers." Id. at 517.

Dr. Legg and Ms. Hubbard both signed a mental questionnaire about Smith in November 2014. Id. at 2182–83. The assessment indicates that Smith has extreme limitations with "[a]ccept[ing] instructions and respond[ing] appropriately to criticism from supervisors" as well as "respond[ing] appropriately [to] ordinary stressors in a work setting with simple tasks." Id. at 2182. The report also states that Smith has marked limitations with "[m]aintain[ing] attention and concentration," "[c]omplet[ing] a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "interact[ing] appropriately with the general public," and "[g]et[ting] along with coworkers." Id. The evaluation also notes that Smith has medium limitations with "[p]erform[ing] activities within a [s]chedule, maintain[ing] regular attendance and/or be[ing] punctual within customary tolerances." Id. The questionnaire also indicates that Smith would be off task more than thirty-three percent of a workday and absent three or more days per month due to his mental impairments. Id. at 2183.

### 2. Smith's Testimony

Smith testified on February 28, 2011, id. at 45–63, and on December 16, 2014, id. at 799–814. At the first hearing, Smith testified that he is a high school graduate and provided an overview of his work history, stating that he stopped working because he could no longer physically do the work. Id. at 46–47. Smith testified that he is 5 feet 5 inches and 289 pounds, and has lost nearly thirty pounds by reducing his calorie count. Id. at 54. Smith lives with his fiancée and three children. Id. at 48. He recounted that around February 15, 2009, he tried to get out of bed and could not, due to back pain. Id. at 49. He testified that since that date, he continues to have back and knee problems, sleep apnea, high blood pressure, diabetes, and depression. Id.

Smith testified that on a typical day, he wakes up around 8:00 am and takes his medications, then reclines on his couch and watches TV for about an hour, after which he gets up to move around and then sits back down. Id. at 53. He noted that he usually cannot sit for longer than fifteen minutes without experiencing pain, cannot stand for longer than twenty minutes, and cannot walk more than a quarter of a mile, but that his pain is somewhat alleviated by reclining. Id. at 50. He also testified that he "can lift about a half gallon of milk with no pain," but experiences severe pain if he lifts more; cannot bend to pick things up; drops anything that he holds for a length of time; and is challenged by climbing stairs. Id. at 50–51. Although Smith said that he helps with childcare by "keep[ing] his child] in the room," he said he cannot do more and does not help around the house with more than rinsing dishes and loading the dishwasher. Id. at 53. He testified that he usually wears a knee brace, id. at 62, and does not drive due to back spasms that make him unable to turn or spin, id. at 54. Smith testified that he sleeps very uncomfortably at night, getting between six and eight hours of interrupted sleep, with the help of a CPAP machine. Id. at 51–52, 58.

Smith takes numerous medications: Metformin for cholesterol, high blood pressure medication, Cymbalta for depression, Flexeril for back pain, Lyrica for fibromyalgia, and another medication for water

weight. Id. at 52. He testified that his medications cause him to experience severe drowsiness, to the point that he sometimes loses his train of thought in the middle of a conversation. Id. at 52–53. Smith testified that when he takes pain medication, it helps lower his typical pain (nine out of ten) to an eight out of ten. Id. at 54–55. He stated that the pain is so severe that "[i]t's all I can do to keep my eyes open," and that he would not have the capacity to concentrate on the tasks of his prior work, even with pain medication. Id. at 55.

Smith discussed his medical providers: Dr. Fang, his clinical pain specialist; Dr. Wacendak, his general practitioner; Dr. Russell for mental health; and John Slattery for help with his sleep apnea. Id. at 49, 57. Smith said he sees Dr. Fang every six weeks, id. at 59, and had seen Dr. Russell once a week, but has stopped appointments and cannot remember the last time that he saw Dr. Russell, id. at 57.

Smith also testified that he has been experiencing severe depression since around October 2008. Id. at 55. He said that when he is depressed, he stays in his bedroom and does not want anyone around him. Id. at 56.

At the second hearing, Smith testified that he has not gone back to any kind of work since his first hearing. Id. at 799. He said he has been seeing Dr. Mikloucich for primary care for about a year; going to UHC Orthopedics for his knees; and had recently begun seeing Dr. Legg for mental health, after Dr. Legg took over for Nurse Practitioner Cron, who Smith saw for about three years. Id. at 800–02. Smith testified that he still visits Dr. Fang every six weeks, and that she had gotten Smith a back brace for back pain and is giving him trigger point shots in his back every six weeks. Id. at 803–04. Smith stated that since his last hearing, he has begun taking Invokana to help with his diabetes, id. at

805, and Kremidone to help with prominent tremors in his arms that began about a year and a half before the hearing, id. at 806–07; he has gotten carpal tunnel surgeries on both arms, and that he has begun getting eight-hour-long migraine headaches three times a week, id. at 808. Smith stated that with the help of a mask for sleep apnea, he is able to get about five hours of sleep a night, and that during the day he lays down and gets additional rest by dozing three to five hours. Id. 813–14.

## II. ANALYSIS

■■■ A court reviewing the Commissioner's decision to deny benefits "may set aside the Commissioner's decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." Greek v. Colvin, 802 F.3d 370, 374–75 (2d Cir. 2015); see also 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The substantial evidence standard is "a very deferential standard of review ... once [a hearing officer] finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Accordingly, the Court will uphold the hearing officer's findings even "[i]f evidence is susceptible to more than one rational interpretation." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

### A. Social Security Disability Standard

■■■ An individual qualifies as disabled if he or she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To determine whether a person is disabled, the Commissioner examines five sequential questions: (1) is the claimant engaged in substantial gainful activity; (2) does the claimant have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement; (3) does the claimant have an impairment(s) that meets or equals the severity of the impairments specified in the regulations; (4) based on an RFC assessment, is the claimant able to perform past relevant work; and (5) based on the claimant's RFC, age, education, and work experience, is the claimant capable of performing other work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show "that significant numbers of jobs exist in the national economy that the claimant can perform." McIntyre, 758 F.3d at 150–51.

### B. The Hearing Officer's Decision

The hearing officer followed the five-step sequential evaluation in making his determination. See. Admin. R. 720–36. At step one, the hearing officer found that Smith had not engaged in substantial gainful activity since his alleged onset date. Id. at 720. At step two, the hearing officer found that Smith had a number of severe impairments: (1) status post bilateral total knee replacements with degenerative joint disease, (2) status post bilateral carpal tunnel syndrome and carpal tunnel releases, (3) cervical spine degenerative disc disease, (4) obesity, (5) fibromyalgia, and (6) depressive disorder. Id. At step three, the

hearing officer found that Smith did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Id. at 722. The hearing officer then determined Smith's RFC, finding that Smith could:

> sit for six hours in an eight-hour workday; stand and/or walk for a total of two hours in an eight-hour workday; lift and/or carry no more than ten pounds; and should avoid climbing ladders, scaffolds, or ropes and working at unprotected heights. [Smith] would need to change positions from sitting or [sic] standing or standing to sitting about every 30 minutes but need not leave the workstation or area. He retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others; and handle reasonable levels of simple, repetitive work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place changes and interactions associated with simple work.

Id. at 726. The hearing officer then proceeded to step four, finding that Smith could not perform any past relevant work. Id. at 734. Reaching step five and noting that Smith was thirty-nine years old, had at least a high school education, and was able to communicate in English, the hearing officer found that Smith could perform jobs that exist in significant numbers in the national economy. Id. at 735. Accordingly, the hearing officer held that Smith was not disabled nor entitled to benefits. Id. at 736.

## C. Smith's Challenges

Smith argues that the hearing officer primarily erred in finding that Smith could perform sedentary work because the hearing officer failed to consider whether Smith could work consistently. Pl.'s Br. 1, 11–15. Smith additionally asserts that the hearing officer improperly determined Smith's mental RFC, id. at 15–22, and erred by using Smith's daily activities against him, id. at 22–23. Finding substantial support for the Commissioner's decision in the record and that the hearing officer applied the correct legal standards, this Court disagrees with Smith on each of his three challenges.

### 1. RFC Determination

To determine a claimant's RFC, a hearing officer looks at all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Second Circuit has noted:

> [A hearing officer] is required to give controlling weight to the medical opinion of a claimant's treating physician when that opinion: (1) concerns the nature and severity of an impairment; (2) is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (3) is not inconsistent with other substantial evidence in the case record.

Meadors v. Astrue, 370 Fed.Appx. 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). If a hearing officer does not give a treating source's opinion controlling weight, then the hearing officer considers the following factors to determine what weight to assign an opinion: (1) length of treatment relationship and frequency of examination, (2) nature and extent of the treatment relationship, (3) relevant evidence to support opinion, (4) consistency with the record, (5) specialization, and (6) other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### a. Physical RFC: Ability to Work Consistently

Smith argues that because the vocational expert testified that an individual being off task around eight percent of the time or being absent from work once per month would reduce the number of available jobs, the hearing officer erred in determining Smith's RFC by rejecting three treating sources' medical opinions concerning Smith's ability to stay on task or maintain acceptable levels of attendance due to his physical impairments. Pl.'s Br. 13. Specifically, Smith asserts that because the hearing officer did not cite any medical opinions contradicting the treating sources, the conclusion that Smith can engage in substantial gainful activity is not supported by substantial evidence. Id. at 14. The Commissioner counters that the hearing officer thoroughly considered and evaluated all medical opinions in the record, that his findings are supported by substantial evidence, and that a hearing officer has the final responsibility to determine a claimant's RFC based on the complete record. Def.'s Br. 6–7, 11–12 (citing 20 §§ 404.1527(d)(2), 416.927(d)(2)). For the reasons discussed below, this Court upholds the hearing officer's physical RFC determination.

Smith argues that under Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998), the hearing officer must not reject medical opinions about Smith's lessened abilities to concentrate and attend work without a medical opinion supporting this rejection. Pl.'s Br. 14. In Balsamo, the Second Circuit held that the hearing officer's failure to offer "any medical opinion to dispute the treating physicians' conclusions that [the claimant] could not perform sedentary work" merited remand. Balsamo, 142 F.3d at 81, 82. Here, however, the hearing officer cited numerous medical opinions to support his finding that Smith was able to

perform sedentary work: (1) Dr. Datta's July 2009 medical source statement; (2) Physical Therapist Mansfield's April 2011 assessment; (3) Dr. Jenouri's April 2013 consultative physical examination; (4) Dr. Federowicz's January 2009 opinion; and (5) Dr. Schulman's April 2009 opinion. Admin. R. 730–31. In fact, Physical Therapist Mansfield explicitly stated that Smith "appear[ed] capable of performing sedentary to light work," id. at 1989; Dr. Federowicz indicated that Smith could "perform[ ] a sit-down job as well as a sedentary type of job," id. at 455; and Dr. Schulman noted that Smith could "return to work in a light duty capacity," id. at 465.

Smith contends that the hearing officer could not reject the opinions of Dr. Fang, Dr. Mikloucich, and Dr. Wiesner. Pl.'s Br. 12–15. The Commissioner responds that "the [hearing officer] properly discounted treating source opinions that were inconsistent with other substantial evidence in the record. Instead, the [hearing officer] gave substantial weight to [other medical opinions]." Def.'s Br. 9 (citations omitted). Because the hearing officer discounted the weight of treating source opinions using the proper factors set out by the regulations, see 20 C.F.R. §§ 404.1527(c), 416.927(c), the hearing officer did not err.

The hearing officer considered Dr. Mikloucich's July 2014 assessment and gave it little weight in determining Smith's RFC, as Dr. Mikloucich's treating relationship with Smith was relatively short (beginning in July 2013). Admin. R. 2092. The hearing officer further noted that the doctor's treatment records were not inconsistent with the hearing officer's findings. Id. at 729. For instance, in December 2013, Dr. Mikloucich stated that he "d[id] not feel [Smith] qualifies for disability" and "fe[lt] his back pain would improve with regular exercise and weight loss." Id. at 2181. The hearing officer properly discounted this opinion in accordance with the regulations,

according the assessment less weight based on the length of the treatment relationship, evidence to support the opinion, and inconsistency with the record as a whole. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

The hearing officer noted that Dr. Wiesner's September 2014 assessment was not consistent with the doctor's treatment notes, Admin. R. at 731, which repeatedly stated that Smith "fe[lt] he [wa]s doing very well," was "in no acute distress," id. at 666, and "had excellent results" from the surgery, id. at 1835. Accordingly, based on the inconsistencies between the treatment notes and Dr. Wiesner's ultimate September 2014 assessment, as well as the fact that the assessment seemed to depend on Smith's obesity, which Dr. Wiesner did not treat him for, the hearing officer discounted Dr. Wiesner's opinion. Id. at 731. Because the regulations allow a hearing officer to consider the treatment relationship and supportability in assigning weight to a medical source opinion, see 20 C.F.R. §§ 404.1527(c), 416.927(c), the hearing officer here examined appropriate factors in concluding that Dr. Wiesner's opinion merited less weight.

The hearing officer noted that no evidence in the record suggests that Dr. Fang ever conducted any mental status examinations of Smith and thus that it appeared that Dr. Fang's January 2011 assessment simply relied on Smith's own report of his psychiatric symptoms. Admin. R. at 732. Accordingly, although the hearing officer accorded weight to Dr. Fang's assessment of Smith's physical abilities, the hearing officer did not consider Dr. Fang's indications about Smith's ability to concentrate and maintain work pace. Id.

Finding no clinical or diagnostic evidence to support Dr. Fang's July 2014 assessment that Smith would have increased limitations, the hearing officer de-

cided not to grant Dr. Fang's report controlling weight. Id. at 732. Because the regulations mandate that a hearing officer consider examining relationship, treatment relationship, and supportability in considering any medical opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c), the hearing officer considered appropriate factors in determining the varying weights to accord to Dr. Fang's assessments.

On balance, there is substantial evidence to support the hearing officer's determination of Smith's ability to engage in sedentary work. Although Smith argues that the hearing officer did not have evidence that directly contradicted Dr. Fang, Dr. Wiesner, and Dr. Mikloucich's assessments of Smith's ability to concentrate and maintain work pace, Pl.'s Br. 14, the hearing officer offered valid reasons for affording those assessments less weight, as well as pointed to numerous medical opinions that do not support the treating sources' determinations. Accordingly, this Court upholds the hearing officer's physical RFC finding.

### b. Mental RFC

■ Smith next argues that the hearing officer's determination of Smith's RFC is not supported by substantial evidence. Pl.'s Br. 24. The Commissioner counters that the hearing officer's determination used the correct legal standards and is supported by substantial evidence. Def.'s Br. 12. After a thorough review of the administrative record, this Court is satisfied that substantial evidence supports the Commissioner's decision.

To determine Smith's mental RFC, the hearing officer considered Dr. Noia's consultative psychiatric examination of Smith from July 2009, Dr. Loomis's findings and conclusions, Dr. Russell's opinion, Dr. Harding's July 2009 mental RFC assessment, and Dr. Legg and Ms. Hubbard's assessment. Admin. R. 733–34. The hearing officer accorded Dr. Noia's examination and Dr. Loomis's conclusions significant

weight, noting that both were consistent with other evidence in the record. Id. at 733. The hearing officer gave substantial weight to Dr. Russell's opinion, due to its consistency with other objective medical evidence and other evidence in the record, including Nurse Practitioner Cron's treatment notes. Id. at 734. The hearing officer also accorded some weight to Dr. Harding's assessment, noting it was consistent with the record. Id. Lastly, the hearing officer accorded little weight to Dr. Legg and Ms. Hubbard's assessment, noting that it had no supporting clinical nor diagnostic findings, was not consistent with other evidence in the record, and that the record contained no evidence of a treating relationship between Smith and Dr. Legg prior to the assessment. Id. at 724–25, 734. Because the hearing officer weighed the evidence in accordance with the factors set out by regulation, see id. at 733–34; see also 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927, and cited substantial support for his determination, this Court upholds the Commissioner's determination of Smith's mental RFC.

### 2. Daily Activities

■ Smith last argues that the hearing officer improperly used Smith's daily activities against him. Pl.'s Br. 22. The Commissioner counters that the hearing officer properly considered Smith's daily activities in accordance with the regulations. Def.'s Br. 18. The hearing officer properly considered Smith's daily activities and based his RFC determination on other substantial evidence; thus, Smith's challenge fails.

The regulations state that a hearing officer will consider a claimant's daily activities relevant to a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Further, the hearing officer is to "evaluate [a claimant's] statements in relation to the objective medical evidence and other evidence," as well as "the extent to which

there are any conflicts between [a claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Although a hearing officer can reject a claimant's testimony regarding his or her symptoms, the hearing officer must sufficiently explain the reasons for finding that the witness is not credible. See Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988); Toth v. Colvin, No. 5:12-CV-1532 (NAM/VEB), 2014 WL 421381, at *8 (N.D.N.Y. Feb. 4, 2014).

Here, the hearing officer specifically states that he rejected Smith's testimony as not fully credible because "[Smith's] activities show that he has actually been doing more than what his allegations claim he is capable of performing." Admin. R. 729. For instance, at his February 28, 2011 hearing, Smith testified, "I don't drive." Id. at 54. At an April 19, 2011 doctor's appointment, Smith again "report[ed] he is unable to drive"; but following the appointment, was observed "exit[ing] the office, proceed[ing] to the driver's side door of a green Ford Ranger pick-up truck at which time he entered the vehicle and drove himself out of the parking lot." Id. at 2216. On September 20, 2011, Smith attended another appointment, at which he "report[ed] he is not driving secondary to concern of his visual changes." Id. at 2202. At the end of the appointment, however, Smith was again observed "leav[ing] the office, get[ting] into his white SUV and driv[ing] himself out of the parking lot." Id. In his February 2011 testimony, Smith also noted, "I don't do any of the cooking." Id. at 53. On April 25, 2013, however, Smith "report[ed] cooking three times a week." Id. at 1891. The hearing officer noted such inconsistencies in finding Smith's complaints not fully credible. See id. at 729, 733. Given Smith's conflicting

reports, as well as the observations of Smith engaging in activities that he specifically stated he was unable to do, the hearing officer had sufficient reasons to reject Smith's credibility and properly identified his reasons for doing so. Further, there is substantial evidence to support the hearing officer's finding, as well as his decision to discount Smith's reported symptoms as being in conflict with the evidence in the record. Accordingly, the hearing officer properly considered Smith's daily activities in coming to his final decision.

## III. CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision and dismisses Smith's complaint, ECF No. 1.

**SO ORDERED.**

---

1. Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration, and thus is substituted for Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).